# Boyertown Water Company et al., Appellants, *v.* Boyertown Borough.

*Water companies—Exclusive privileges—Boroughs.*

The Act of June 2, 1887, P. L. 312, amended the Act of April 29, 1874, P. L. 94, section 34, cl. 3, and thereby repealed the exclusive privileges given to water companies under the latter act.

Where a water company under its charter was required to furnish water free to a borough for the extinguishment of fire, the acceptance of such water by the borough does not forfeit the borough's right to provide a supply of water for the use of its inhabitants.

Argued Feb. 26, 1900. Appeal, No. 59, Jan. T., 1900 by plaintiffs, from decree of C. P. Berks Co., Jan. T., 1900, No. 718,

on bill in equity in case of the Boyertown Water Company
and William D. Kehl v. The Borough of Boyertown.   Before
GREEN, C. J., McCOLLUM, FELL, BROWN and MESTREZAT, JJ.
Affirmed.

Bill in equity for an injunction.

ERMENTROUT, P. J., filed the following opinion:

From the testimony submitted I make the following findings
of fact:

1. William D. Kehl, one of the plaintiffs, is a citizen, tax-
payer, and owner of real estate in the borough of Boyertown,
defendant.

The Boyertown Water Company is a corporation under the
law of the commonwealth of Pennsylvania erected by special
act of assembly entitled "An act authorizing the governor to
incorporate the Boyertown Water Company," approved April 18,
1856, P. L. 440.   Subsequently, said corporations having ac-
cepted the provisions of the constitution of the said common-
wealth adopted December 16, 1873, and the provisions of an
act entitled "An act to provide for the incorporation and regu-
lation of certain corporations," approved April 29, 1874, P. L.
73, and supplements thereto, letters patent dated June 22,
1898, were duly issued pursuant to the provisions of the law.

2. Said corporation was, by said act of assembly approved
April 18, 1856, authorized, among other things, "to bring and
convey into the village of Boyertown in the county of Berks a
sufficient supply of fresh and pure water," and to "permit in-
dividuals and companies at all times to be supplied with water
from the pipes laid by them, for domestic and manufacturing
purposes and for the supply of stationary and locomotive en-
gines," at uniform rates or prices.   It was further therein pro-
vided that "whenever the citizens of Boyertown either by them-
selves or by the corporate authorities of Boyertown, should it
be hereafter at any time incorporated, shall erect fire plugs, to
be used solely for the extinguishment of fires, the said presi-
dent and manager of the said water company shall permit the
same to be connected with their pipes laid in said village and
allow the inhabitants thereof to take and use water through
said plugs without charge, for the extinguishment of fires, but
not otherwise."

3. At the time of the passage and approval of the said act of April 18, 1856, mining operations carried on in the vicinity of the said village of Boyertown had destroyed many of the wells from which the inhabitants obtained their supply of water and threatened the destruction of the remaining wells, and the said water company promptly and within six months from the time of its organization proceeded to bring and did bring into the said village a supply of water, as contemplated by the act of assembly under which it was organized.

4. The said Boyertown Water Company expended thousands of dollars in securing water rights, in laying mains and other pipes for the distribution of the said water, and in enabling itself to comply and in complying with the requirements of its charter and in furnishing the inhabitants of the village of Boyertown with water, and from the time of the introduction of the said supply of water to the time of the incorporation of the said borough, that is, for a period of about ten years, it, the said Boyertown Water Company, permitted individuals and companies to be supplied with water from its pipes for domestic and manufacturing purposes and for stationary and locomotive engines, and permitted the inhabitants and citizens of the said village to use water from the said pipes for the extinguishment of fires, as provided by the act of assembly.

5. The said borough of Boyertown, defendant, is a municipal corporation, organized and existing under and by virtue of the provisions of an act of the general assembly, entitled "An act regulating boroughs," approved April 3, 1851, having been erected by a decree of the court of common pleas of Berks county on October 2, 1866. By said act of April 3, 1851, the said borough was authorized to provide a supply of water for the use of the inhabitants thereof.

6. From the incorporation of the said borough of Boyertown to this time, the said water company has continued and yet continues to furnish water under the authority of its said charter of 1856 and said letters patent of June 22, 1898.

7. The supply of water furnished by said Boyertown Water Company being wholly inadequate for the wants of the borough which was increasing in population, a large number of the citizens of the said borough of Boyertown, on July 20, 1894, presented to the authorities of said borough the following petition:

" To the Chief Burgess and Town Council of the borough of Boyertown, Gentlemen : Whereas the water facilities in the lower section of the Borough of Boyertown, below the railroad, are inadequate and the property and lives in said section in imminent danger of fire ; therefore, we the undersigned property holders and citizens of the Borough of Boyertown, having the welfare and safety of property and lives of our citizens at heart, respectfully ask your honorable body to devise such plans and adopt such means as will give protection against damage by fire, and we will ever pray," etc.

After some delay and an unwillingness of the said Boyertown Water Company to extend its system to the furnishing of a proper water supply for better fire protection, they were induced to do so by a contribution of· $1,900 made by said borough as hereinafter set forth.   The action of the said Boyertown Water Company and said borough authorities in the premises is as follows :

" Articles of agreement made and entered into this fifteenth day of April A. D. One Thousand Eight Hundred and Ninety-five, between the ' Boyertown Water Company,' of the Borough of Boyertown, Berks County, and State of Pennsylvania, of · the one part, and the ' Borough of Boyertown,' of the same place, of the other part ;

" Whereas a large number of citizens of Boyertown in said county and State, residing east of Reading Avenue in said Borough, have petitioned to said Borough authorities for a more adequate supply of water ;

" And whereas the Burgess and Borough Council of said Borough, after due deliberation, did approve of the prayer of said petitioners, and are willing that their request shall be granted ;

" And whereas application was thereupon made by said Borough to the said Boyertown Water Company, requesting them to lay pipes and extend their water supply into certain streets petitioned for by citizens as aforesaid ;

" And whereas the said Boyertown Company is unwilling to extend its system by the laying of water pipes in the streets asked for, unless a certain amount of money shall be paid to the said Boyertown Water Company by the said Borough of Boyertown so as to partially reimburse the said company for

the cost of what the said Water Company considers an unprofitable investment for the said company;

" And whereas the said Borough of Boyertown did, through its Town Council, on the 3d day of April, A. D., 1895, pass a certain ordinance, which was signed and approved by the Burgess of said Borough, which reads as follows:

" No. 24.

" AN ORDINANCE.

" Be it ordained by the Burgess and Town Council in council assembled and it is hereby enacted by authority of the same, that

" In compliance to a petition for better fire protection in the Borough of Boyertown, east of the railroad, the Borough Council have contributed towards the expense of the Water Co. to lay 8 inch water pipes on East Philadelphia avenue from Reading avenue to Madison street, and 6 inch pipes on Washington Street from Philadelphia avenue to Second Street. Said contribution to be made in 20 semi-annual payments of $95 each.

" Enacted into an ordinance this 3d day of April, A. D., 1895.

" JOHN G. SCHEALER, Burgess.

" Attest: J. F. D. GEIGER, Clerk.

" Now, therefore, it is hereby agreed by and between the said Boyertown Water Company and the said Borough of Boyertown, as follows, to wit:

" That for and in consideration of the said Boyertown Water Company laying its pipes as hereinafter set forth, the said Borough of Boyertown shall, and it hereby agrees to pay to the said Boyertown Water Company the sum of Nineteen Hundred Dollars in twenty semi-annual payments of Ninety-five Dollars each, covering a period ten years—the first payment of Ninety-five Dollars ($95) to be made on the first day of the month following the completion of the work, Ninety-five Dollars ($95) on the 2d day of January, 1896, and thereafter the sum of Ninety-five Dollars ($95) on the 2d day of July and 2d day of January of each and every year until the whole sum of Nineteen Hundred Dollars ($1900) shall be paid.

" Provided, however, and it is hereby expressly agreed, that

if at any time default shall be made in the payment of any of the semi-annual payments for the space of thirty days after any payment thereof shall fall due, then and in such case the whole principal debt aforesaid shall, at the option of the said Boyertown Water Company, or its successors in office, become due and payable immediately, and payment of said principal and all interest due thereon may be enforced and recovered at once, anything herein contained to the contrary thereof notwithstanding.

" And the said Boyertown Water Company and its successors in office shall and do hereby agree to lay an eight-inch water pipe on East Philadelphia Avenue from Reading Avenue to Madison Street in said Borough, and a six-inch pipe on Washington Street from East Philadelphia Avenue to Second Street, and place a **T** at every square to connect fire plugs, and do further agree to furnish free of charge all the water that may be necessary in case of fire, provided the company's supply is sufficient for such emergency—and also agrees to allow the use of water for engine practice, provided that the water used for such purpose shall at no time diminish the supply of water below the amount needed for daily consumption by the citizens of the Borough. The said Borough of Boyertown further agrees to pay to the said Boyertown Water Company the further sum of Four Dollars ($4) for each and every **T** put in position along the line of the pipe in the above named streets, so soon as they are ready for use.

" In testimony whereof the parties to the above agreement, to wit, the President of the Boyertown Water Company and the Burgess of the Borough of Boyertown, have hereunto respectively affixed the common seals of their said respective corporations at Boyertown the day and year first above written.

8. Thereupon the borough erected water plugs, connecting them with the said water company's pipes, under the provisions of the aforesaid agreement.

9. Whilst the plant and facilities for furnishing water supply of the said Boyertown Water Company is capable of enlargement, it has not furnished an adequate supply of water for the protection of the lives and property of the people of the borough against fires. Whilst there may be enough water the ordinary economical use of water for domestic purposes, the supply is

not sufficient for both domestic and manufacturing purposes and protection against fire.

10. Letters patent, as set forth in paragraph one of these finding of facts, was issued to the said Boyertown Water Company on June 22, 1898. But previous to the issuing of such letters patent, to wit: on January 6, 1898, the said borough of Boyertown desiring to supply the borough of Boyertown and the inhabitants thereof with water, passed an ordinance to provide for the holding of an election to obtain the assent of the electors of the borough of Boyertown to an increase of the indebtedness thereof to the extent of $35,000 to be devoted toward the making, erecting and maintaining proper waterworks, machinery, buildings, cisterns, reservoirs, pipes and conduits for the raising, reception, conveyance and distribution of water by the said borough to the inhabitants thereof.

On said January 6, 1898, the borough authorities in accordance with law, gave due and legal notice of an election to be held by the electors of the borough of Boyertown to obtain the assent to the increase of the indebtedness of the borough of Boyertown, to be held Tuesday, February 15, 1898, between the hours of 7 A. M. and 7 P. M., with statement of the financial condition of the borough. Said election was duly held February 15, 1898, and the result of said election was, upon return thereof, duly approved by the court on February 17, 1898. The election return was in favor of increasing the debt, 121 votes having been cast for " No increase of debt," and 203 votes having been cast for " Debt may be increased." The election returns were duly made, computed before the court, and, in accordance with law, duly returned and recorded.

Thereupon the borough authorities of the borough of Boyertown took necessary steps to carry into effect the establishing of a water system or plant of its own independent of the said water company, entered into articles for the purchase of water rights, and were proceeding to do all other acts necessary in the premises.

The establishment of such water system by the borough is not injudicious, and is not against the interest of the property owners and taxpayers of the said borough. Neither under the provisions of the act of April 18, 1856, nor the act of April 29, 1874, nor the act of June 2, 1887, P. L. 310, nor by the pro-

visions of their letters patent has said Boyertown Water Company any exclusive right to the furnishing of any water supply to the borough of Boyertown and its inhabitants. The said borough of Boyertown and its authorities have done no act or acts estopping them or precluding them from carrying into effect the power given to said borough to provide a supply of water for the use of the inhabitants.

### CONCLUSIONS OF LAW.

1. Under the act of April 18, 1856, the Boyertown Water Company acquired no exclusive right or privilege to supply water to the village of Boyertown or the borough of Boyertown.

2. The acceptance of the provisions of the constitution and the act of April 29, 1874, and its supplements and amendments, did not confer upon or grant to said Boyertown Water Company the exclusive right or privilege to supply water to the said borough of Boyertown.

3. The borough of Boyertown, under the provisions of the act of April 3, 1851, regulating boroughs of this commonwealth, and supplements thereto, had the right, power and privilege to provide a supply of water for the use of the inhabitants thereof. The said act of April 3, 1851, was not repealed by the act of April 29, 1874, or its supplements.

4. Neither the petition of citizens of July 20, 1894, nor the ordinance of April 3, 1895, nor the ordinance and agreement of April 15, 1895, nor the action thereunder taken by the borough of Boyertown and the said Boyertown Water Company, have taken away from said borough the power of the said borough to provide a supply of water for the use of the inhabitants thereof. Neither any or all of said acts constitute the exercise of the power of said borough to provide a supply of water for the use of the inhabitants.

5. The said borough of Boyertown had and has the right to adopt and establish a water system or plant of its own independent of and in competition with the said water company, and to adopt all necessary and legal means for such purpose.

There is nothing in the facts or in the law justifying the court in interfering with the acts of the said borough of Boyertown in the premises.

## DISCUSSION.

Neither the water company nor the borough have any power to provide a supply of water for the use of the inhabitants beyond what is delegated to either of them by the commonwealth. There is nothing in the act of April 18, 1856, conferring exclusive power upon the water company. A grant of exclusive privileges is not favored by the law. There is nothing in the act to show that the legislature intended any such privileges. Acceptance of the provisions of the constitution and the provisions of the act of April 29, 1874, and supplements, gave the water company no exclusive right as against the rights of the borough, for the following reasons :

(*a*) The act of June 2, 1887, P. L. 310, amended the act of April 29, 1874, thereby repealing the exclusive privileges given water companies under said act: Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568.

(*b*) Said acceptance of the provisions of the constitution and said act of assembly by said water company was not made until June 22, 1898, when letters patent were issued, whereas the borough of Boyertown, under the law, had proceeded to adopt and establish a water system of its own as early as January 6, 1898, and with due diligence were proceeding with the exercise of their power to supply the municipality with water.

The making of the agreement of April 15, 1895, was not an exercise of the power to supply the municipality with water under the provisions of the borough act of 1851. Under the act of April 18, 1856, it is provided that " whenever the citizens of Boyertown either by themselves or by the corporate authorities of Boyertown, should it be hereafter at any time incorporated, shall erect fire-plugs, to be used solely for the extinguishment of fires, the said water company shall permit the same to be connected with their pipes laid in said village and allow the inhabitants thereof to take and use water through said plugs without charge, for the extinguishment of fires, but not otherwise."

Plaintiffs took their charter knowing that they must gratuitously permit the erection and attachment of fire plugs, and knowing also, that the future borough would have, under the act of 1851, the express power of providing a supply of water for the use of its inhabitants. Literally construed, it gave to

the citizens, or the village authorities, or the borough, the simple right to annex and take water for the limited purpose of the extinguishment of fires regardless of whether the supply was ample or not.

It may be urged that if the water supply was not ample for this specific purpose, that the borough authorities might have compelled the water company to increase their supply, and that it was their duty to do so. Be this as it may, they did not perform this duty; they did not furnish a sufficient supply until the borough authorities agreed to contribute a large sum of money for this specific purpose.

Neither the ordinance nor the agreement recognize the obligation of the company to furnish such sufficient supply. On the contrary, the agreement explicitly sets forth the unwillingness of the water company to fulfill any supposed duty in this respect unless in return for a contribution. Nor does the agreement bind the water company to furnish a sufficient supply. On the contrary, the agreement is " to furnish free of charge all the water that may be necessary in case of fire, provided the company's supply is sufficient for such emergency."

The company's theory of their original charter was the simple right of attachment regardless of quantity of supply, and the agreement made is strictly in accord with this theory. How can it be said that such an agreement permitting the taking of water for fire purposes, a right already granted under their original charter, shall be held to be a contract on the part of the borough to forfeit its right to construct its own works, and to be the execution and carrying out of its full unlimited power to provide a supply of water for the use of its inhabitants? We agree with the counsel for the defendant that the water needed for the extinguishment of fires is only an infinitesimal part of the water needed for the use of the inhabitants of a borough. To say, therefore, that when the borough accepts gratis the water for extinguishment of fires, it forfeits its greater and more comprehensive power to supply water for all purposes of the inhabitants of the borough, is to say something that is altogether unreasonable and which our Supreme Court has never suggested.

The practical effect of the borough constructing waterworks of its own may impair the value of the water company's fran-

chise, but of this the company have no legal cause of complaint: Lehigh Water Company's App., 102 Pa. 515. None of the cases cited by plaintiff seem to us to rule this case. In White v. the City of Meadville, 177 Pa. 643, overruling Howard's Appeal, 162 Pa. 374, the water company was organized upon and in pursuance of a contract with the city to supply it with water. It was held that " the power having been once exercised to supply the city by contract through another creature of the same sovereign, the municipal function had passed from the city." Metzger v. Beaver Falls Borough, 178 Pa. 1, was an application of the same principle.

In Wilson v. Borough of Rochester, 180 Pa. 509, the borough had entered into a contract with the company and permitted it to lay its pipes. The contract obligated the supply of the borough with water for fire protection and for domestic use. Having thus contracted, the borough exhausted its power and could not subsequently erect and maintain waterworks.

The present case, however, is practically ruled by Centre Hall Water Co. v. Centre Hall Borough, 186 Pa. 74, wherein the above cases were distinguished and where it was held that the controlling principle was that "in each of those cases the respective municipalities had exercised their charter right to furnish a supply of water through the agency of the several water companies with which they respectively had entered into contractual relations for that purpose." " They had been parties to the procuring of the establishment of the said water companies, and by their action encouraged the organization of the companies, and on the strength of which the companies spent large sums of money in constructing their plants, laying their pipes, etc. And the municipal corporations having thus exercised their authority once under their charters to furnish a supply of water, could not exercise it again in a different manner to the hurt or injury of the companies they were parties to." There, as here, the company was incorporated with no exclusive priviliges prior to the act of April 29, 1874, and it was held the acceptance of the provisions of the constitution and the provisions of the act of April 29, 1874, with its amendments and supplements thereto, gave it no exclusive privileges, and that the borough never having exercised its charter privileges by contract, the water company had a right to build a plant of its own.

DECREE.

And now, to wit: January 27, 1900, this cause came on further to be heard, whereupon it is ordered, adjudged and decreed that the bill be dismissed at the costs of the plaintiffs.

*Error assigned* was decree dismissing bill.

*Cyrus G. Derr*, with him *C. H. Ruhl* and *Abner K. Stauffer*, for appellant.—The erection by the borough of fire plugs connected with the water company's pipes and the use of water by means of the said plugs, gratis, pursuant to the grant of right contained in the water company's organic law, the permitting of the water company to lay additional pipes for fire purposes in the streets of the borough, and the making of a contract with the water company for the extension of its pipes and the furnishing of water in a portion of the borough not then supplied, constitute an exercise of the borough's power to supply water through the agency of the water company, and the municipality is consequently without power to furnish water by means of a system independent of and in competition with the plaintiff company: White v. Meadville, 177 Pa. 643; Lehigh Water Co.'s Appeal, 102 Pa. 515; Howard's App., 162 Pa. 374; Metzger v. Beaver Falls, Boro. 178 Pa. 3; Wilson v. Borough of Rochester, 180 Pa. 509; Carlisle Gas & Water Co. v. Carlisle Water Co., 188 Pa. 51.

The borough having exercised its power of election and adopted the water company's system, the question as to whether the adopted system is a perfect system, as to whether the supply of water furnished is without qualification sufficient for the public needs is immaterial, because the municipality has as adequate means, by legal proceedings, to compel the enlargement of the water company's system, as it would have to make enlargement of its own system if it had one: Du Bois Boro. v. Du Bois City Water Works Co., 176 Pa. 430.

*Jefferson Snyder*, with him *Jeremiah K. Grant*, for appellee.— All the actions of the borough of Boyertown in the premises were taken in its capacity as a consumer of water and in no way as an exercise of its charter " power to provide a supply of water for the use of the inhabitants."

The grant of exclusive privileges is not favored: Freeport Water Works Co. v. Prager, 129 Pa. 605; Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568.

PER CURIAM, October 11, 1901:

The findings of fact and conclusions of law contained in the opinion of the learned court below so clearly and forcibly sustain the final decree, that we feel constrained to affirm the decree upon the opinion filed. We recognize the fact that it is a case of great hardship on the part of the plaintiff, and if it were possible for us to help the plaintiff we would cheerfully do so. But the plaintiff's works were not erected under a contract with the borough for establishing a supply of water to the borough, and hence no exclusive privilege can be claimed, nor can it be held that the borough had parted with its right to furnish a supply by an exhaustion of its power so to do.

Decree affirmed and appeal dismissed at the cost of the appellant.