The Borough of Braddock *v.* the Penn Water Company and the Pennsylvania Water Company, the latter of which is Appellant.

*Corporations—Recording charter—Acts of April 29, 1874, and June 2, 1887—Water companies.*

The corporate existence of a water company does not date from the issuance of its patent, but from the date of recording its charter in the county where its " chief operations are to be carried on."

A water company to which letters patent were issued on March 18. 1887, but which did not record its charter in the county where its chief operations were to be carried on until May 3, 1888, acquired no exclusive franchises, since its corporate existence did not begin until after the passage of the Act of June 2, 1887, P. L. 310, which so amended the general corporation act of 1874, that water companies created thereunder did not secure exclusive franchises.

Argued Nov. 3, 1898. Appeal, No. 102, Oct. T., 1898, by Pennsylvania Water Co., from decree of C. P. No. 3, Allegheny Co., May T., 1897, No. 707, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

McCLUNG, J., filed the following opinion:

The controversy in this case is as to the right to furnish water to certain portions of Braddock township adjoining the borough of Braddock, one of said districts since the rights of the water companies attached, having been annexed to the borough of Braddock and now, with a slight addition of territory, constituting its fourth ward. The two water companies received their charters upon the same day, and recorded them upon the same day. The Penn Water Company was authorized to supply water to Braddock township, and the Pennsylvania Water Company was authorized to supply water to the Sterrett township, which adjoins Braddock. On August 10, 1888, the Penn Water Company, assuming to act under the provisions of the act of April 17, 1876, conveyed its franchises and property to the Pennsylvania Water Company. It is therefore the Pennsylvania Water Company, claiming the franchises of

the Penn Company, that is here contesting with Braddock borough as to the right to supply water. As the case proceeded, doubt was suggested as to the right of the Penn Company to transfer its franchises to the other company, but this point was not pressed upon the argument, and the right to thus merge the two companies seems to be now conceded by counsel for the borough. Under these circumstances, we will assume that the Pennsylvania Company has, as to Braddock township, all the rights which the Penn Company would have had if no consolidation had been effected.

The facts relevant to the controversy are found as follows, viz :

1. The borough of Braddock was incorporated in 1867, under the borough act of 1851.

2. It constructed its own system of waterworks, completing the same in the autumn of 1886.

3. Beginning in 1886, and continuing up to the time of filing the bill in this case, the borough of Braddock, under contracts made by authority of the Act of June 10, 1885, P. L. 81, has laid pipes and supplied water to various districts of Braddock township adjoining said borough, to wit: to a small district on the east of Thirteenth street, a district known as North Braddock and a district known as Copeland.

4. On June 2, 1894, the district called Copeland was annexed to the borough of Braddock, and with slight additions of territory, now constitutes the fourth ward of said borough.

5. The water companies, defendant, presented their articles of association and letters patent issued to each of them on March 18, 1887, under the provisions of the Act of April 29, 1874, P. L. 73, the purpose of the Pennsylvania Company being the supply of water to the citizens of Sterrett township, Allegheny county, and that of the Penn Water Company the supply of water to the citizens of Braddock township, Allegheny county.

6. These charters were recorded on May 3, 1888, in the recorder's office of Allegheny county, in charter book, volume 13, pages 20 and 23.

7. The Penn Water Company was merged in the Pennsylvania Water Company, August 10, 1888, under the authority and proceedings above referred to.

8. Beginning at about the time of the recording of the charters, i. e., early in May, 1888, some surveys were made by Mr. J. H. Harlow, one of the promoters of the enterprise, and now the president of the Pennsylvania Company.    But no other work was done until after the merger or consolidation.    In February, 1889, property in Penn township, on a hill overlooking the Allegheny river, was purchased as a site for a reservoir, and in the same month a contract with Mr. J. H. Harlow to build the works was executed by the Pennsylvania Company.    Pipes were laid from the reservoir through Penn and Sterrett townships to Braddock township.    The first pipes were laid in Braddock township in March, 1889, and water was turned into the pipes in the autumn of 1889.    Since that date the company has extended its system, laid a large amount of pipe, reaching the vicinity of Braddock borough with its pipe line early in 1890, is increasing the capacity of its works, and seems to have used due diligence in providing for the supply of water to the citizens of Braddock township.

Note. Braddock borough is situate on the Monongahela river, at the south end of Braddock township.    Sterrett township is north of Braddock township, and Penn township lies north of Sterrett, extending to the Allegheny river.

9. This water company began to supply water to the North Braddock and Copeland districts in August, 1890, and was supplying water to residents of Copeland when it became the fourth ward of the borough of Braddock.

10. In the fall of 1896 the water company asked permission of Braddock councils to open Corey avenue, in the Copeland district (then fourth ward), to lay thereon a line of water pipe, and the request was refused.    The request was renewed in February, 1897, permission being asked to open the streets after April 16, 1897, and the request was refused.    On April 20, 1897, the company commenced to lay its line on said Corey avenue, when the borough of Braddock filed the bill in this case.

11. On January 12, 1897, the Pennsylvania Water Company notified Braddock borough to discontinue its water supply in the fourth ward, formerly Copeland, as said company claimed exclusive rights therein under its charter.

12. In this connection attention is called to the fact that after the issuing of letters patent, March 18, 1887, and before the

recording of the same, May 3, 1888, to wit: on June 2, 1887, P. L. 310, the corporation act of 1874 was so amended that water companies created thereunder do not secure exclusive franchises. See Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568.

It is plain that the controlling question in this case is, Did the corporate existence of the water companies begin March 18, 1887, or not until May 3, 1888? If it began at the former date, then the water company now defending took under its charter and the transfer from the other company the exclusive right to furnish water to Braddock township, and would still retain that right even as to the portion of that township which has been annexed to the borough. While the borough of Braddock would, even in that case, doubtless, have the right to continue to furnish water to parties outside the borough where contracts were made under the act of 1885, before March 18, 1887, as long as the parties who had contracted with it chose to take the water, no definite term having been fixed in any of the contracts. Its subsequent contracts would give it no rights with respect to the furnishing of water within the limits of Braddock township. If, however, the corporate existence began May 3, 1888, when the articles of association, etc., were recorded, then the water companies did not take an exclusive franchise, and whilst they, or the surviving one, would have the right to furnish water to the Copeland district, now fourth ward of Braddock, it could not exclude the borough as a supplier of water either from that district or from the other districts involved in this controversy. We do not regard the question as to when the corporations began to exist as such, as open for discussion. It was settled by the case of Guckert v. Hacke et al., 159 Pa. 303. It is there said: "It is plain from a cursory reading of the Act of April 29, 1874, P. L. 73, that recording of the certificate 'in the office for the recording of deeds in and for the county where the chief operations are to be carried on,' was intended to be made one of the conditions precedent to corporate existence." And if, as is there said in support of the conclusion, the exemption from personal liability is a matter of sufficient importance to call for the giving of notice by recording, with greater reason can we base an argument upon the importance of the charter provisions granting and defining the primary franchises of the

corporation. For almost eleven months after the amendment to section 34 of the corporation act of 1874, the promoters of this enterprise did nothing to indicate that they claimed any rights with respect to the furnishing of water to Braddock township, nothing even to indicate that they intended to accept the franchises offered them by the state. The importance of holding them strictly within the powers and privileges granted to them, is emphasized not only by the fact that they are now attempting to exclude a large borough, with a waterworks, from laying pipes in one of its own wards ; but also, by the fact that if the city of Pittsburg adds any more territory on the east, it will have no right to extend its water system to cover it, if the franchise contended for is exclusive. But we are told that the introductory sentence of clause 34, of the corporation act of 1874, provides that water companies, etc., " incorporated under the provisions of this statute " shall " from the date of letters patent creating the same," have the powers, etc., conferred by the succeeding clauses of section 34 ; and therefore as to these companies, whatever may be the rule as to other corporations, the franchises date from the issuing of the certificate. But this is a begging of the question. If, as is held in Guckert v. Hacke, these companies were not incorporated until May 3, 1888, their privileges were defined by section 34 as it then stood, and at that time it conferred no exclusive franchise.

We conclude that the parties plaintiff and defendant have the right to furnish water in the districts involved in this controversy ; the defendant (the Pennsylvania Water Company) under its charter, and the borough of Braddock under contracts made by authority of the act of 1885 as to the districts still within Braddock township, and by virtue of its charter rights as to the Copeland district, now its fourth ward. The borough of Braddock should pay one half of the costs, and the Pennsylvania Water Company the other half. The Pennsylvania Water Company has the right, upon compliance with reasonable borough restrictions, to lay pipe, etc., in the Copeland district.

The court entered the following decree :

And now, April 2, 1898, the above bill and cross-bill having been heretofore heard on bills, answers, replications and testimony, and the court having found the facts and its conclusions

of law, and the same having been filed, it is now ordered, adjudged and decreed as follows:

1. The Pennsylvania Water Company, as the assignee of the franchises of the Penn Water Company, and the borough of Braddock, for the reasons stated in the findings of fact and conclusions of law, each have the right to furnish water to consumers in the districts involved in this controversy, namely, the Copeland district, now the fourth ward of said borough, and the territory still within Braddock township. But neither of above parties has exclusive rights in the district and territory above named.

2. The Pennsylvania Water Company, as assignee of the Penn Water Company, has the right, upon compliance with reasonable borough restrictions, to lay pipes and furnish water in the said Copeland district.

3. The borough of Braddock and the Pennsylvania Water Company each pay one half of the costs in above cases.

*Errors assigned* among others were paragraphs 1 and 3 of the decree.

*A. W. Duff*, with him *Charles H. McKee*, for appellant.—The court below ignored the proposition that charters take effect immediately on their acceptance by the incorporators, and that, when granted, as in this case, on the application of the incorporators, charters take effect immediately upon their issuance: Beach on Private Corp. sec. 15; Rathbone v. Tioga Navigation Co., 2 W. & S. 79.

In disregard of these canons the court undertook to follow the construction put on the corporate act of 1874, in the case of Guckert v. Hacke et al., 159 Pa. 303, and in so doing, we contend, fell into error. This, we think, arose through a misapprehension of the sense in which the word existence is used in a dictum found in the opinion referred to, and taking it for an authority to the effect that the recording of the certificate, as required by the act of 1874, is a prerequisite to corporate existence in the sense of having corporate life; instead of gathering from the case that the recording is to be regarded as one of the lawful conditions of corporate existence, in the sense of living in the full observance of all the statute requires of corporations after their creation and as going concerns.

The law clearly defines the legal effect of letters patent; they create a new being, and are the evidence of a new relation between the commonwealth and the incorporators, and it has never been held in Pennsylvania that the letters patent issued under this act do not have the effect which they purport to have, and which the law gives them. The best evidence of the existence of a corporation is the grant of the corporate powers of the commonwealth: Gibbs's Est., 157 Pa. 69.

*W. B. Rodgers,* with him *A. B. Stevenson,* for appellee.—Recording the charter is a prerequisite condition to corporate existence: Guckert v. Hacke, 159 Pa. 303; N. Y., etc., Bank v. Crowell et al., 177 Pa. 313: Western Pennsylvania R. R. Co.'s App., 104 Pa. 406.

PER CURIAM, January 3, 1899:

The decree in this case is affirmed on the opinion of the learned court below.