# Pennsylvania Water Company *v.* Pittsburg, Appellant.

*Corporations—Water companies — Boroughs — Contract — Exclusive privileges—Municipal corporations.*

A borough ordinance granting without limit as to time permission
to a water company to enter the borough and lay its pipes in the
streets, when accepted and acted upon by the company, constitutes
a contract between the borough and the company to supply water to
the public which exhausts the power of the municipality to supply
itself with water, and prevents the borough from erecting its own
water works for that purpose so long as the water company continues
to furnish a suitable and adequate supply, and this applies whether
the company has or has not an exclusive privilege. Such a contract is
binding on a city which annexes the borough to itself as a ward, and
agrees to recognize all contracts for the supply of water made by the
borough.

BROWN, MESTREZAT and POTTER, JJ., dissent.

Argued Nov. 3, 1909. Appeal, No. 47, Oct. T., 1909, by
defendants, from decree of C. P. No. 2, Allegheny Co., July T.,

1908, No. 690, on bill in equity in case of Pennsylvania Water Company v. City of Pittsburg et al.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.  Before MILLER, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree awarding injunction.

*C. K. Robinson*, with him *W. B. Rodgers*, for appellants.— A water company cannot prevent a city of the second class from extending its lines into a ward served by the company where the company does not have an exclusive franchise from the state, but has an ordinance, and a limited contract, which has expired, with a pre-existing borough; and a limited contract, which has expired, with the city: Braddock Borough v. Penn Water Co., 189 Pa. 379.

The company does not have an exclusive franchise from the state: Braddock Borough v. Penn Water Co., 189 Pa. 379.

Not having an exclusive franchise, the borough of Brushton, if now in existence, could itself construct its own water system. It is observable that out of the great number of decisions of this court relating to this subject there has gradually evolved a distinction between the rights of water companies possessing an exclusive franchise and those having a nonexclusive franchise.  In fact this element has been present and has been considered in the very earliest opinions relating to this subject and has been referred to in the following cases: White v. Meadville, 177 Pa. 643; Centre Hall Water Co. v. Centre Hall Borough, 186 Pa. 74; Philipsburg Water Co. v. Philipsburg Borough, 203 Pa. 562; Philipsburg Water Co. v. Citizens' Water Co., 189 Pa. 23; Braddock Borough v. Penn Water Co., 189 Pa. 379; Tyrone Gas & Water Co. v. Tyrone Borough, 195 Pa. 566; Boyertown Water Co. v. Boyertown Borough, 200 Pa. 394; Hastings Water Co. v. Hastings Borough, 216 Pa. 178.

The Meadville case does not apply to a water company

possessing a nonexclusive franchise: Charles River Bridge v. Warren Bridge, 11 Peters, 420; Philipsburg Water Co. v. Philipsburg Borough, 203 Pa. 562; Hastings Water Co. v. Hastings Borough, 216 Pa. 178.

It seems that this case is very similar to the case of the Troy Water Company v. Troy Borough, 200 Pa. 453, where the company had an exclusive franchise.

The city could now extend its lines into this territory if it were still the borough of Brushton.

There is no contract in this case which prevents the city of Pittsburg from supplying water in its thirty-seventh ward: Muncie Nat. Gas Co. v. Muncie, 160 Ind. 97 (66 N. E. Repr. 436); Valparaiso City Water Co. v. Valparaiso, 33 Ind. App. 193 (69 N. E. Repr. 1018); Boise City Artesian Hot & Cold Water Co. v. Boise City, 123 Fed. Repr. 232; Tillamook Water Co. v. Tillamook City, 139 Fed. Repr. 405; aff'd, 150 Fed. Repr. 117; Bienville Water-Supply Co. v. Mobile, 175 U. S. 109 (20 Sup. Ct. Repr. 40); Helena Water Works Co. v. Helena, 195 U. S. 383 (25 Sup. Ct. Repr. 40); Syracuse Water Co. v. Syracuse, 116 N. Y. 167 (22 N. E. Repr. 381); Knoxville Water Co. v. Knoxville, 200 U. S. 22 (26 Sup. Ct. Repr. 224).

*D. T. Watson*, with him *A. W. Duff* and *Gordon & Smith*, for appellees.—Where a municipality, instead of building its own water works, contracts with a water company for a supply of water and the water company furnishes such supply, the municipality has thereby exhausted its power to supply water and cannot thereafter build water works in competition with the water company: Metzger v. Beaver Falls Borough, 178 Pa. 1; Wilson v. Rochester Borough, 180 Pa. 509; Welsh v. Beaver Falls Borough, 186 Pa. 578; Carlisle Gas & Water Co. v. Carlisle Water Co., 188 Pa. 51; Troy Water Co. v. Troy Borough, 200 Pa. 453; Nelson v. Warren Borough, 200 Pa. 504; Potter County Water Co. v. Austin Borough, 206 Pa. 297; Olyphant Sewage Drainage Co. v. Olyphant Borough, 211 Pa. 526.

The contracts and indebtedness of the old corporations become the contracts and indebtedness of the consolidated or annexing corporations: 28 Cyclopedia of Law and Procedure,

Title, Municipal Corporations, pp. 220–222; Mt. Pleasant v. Beckwith, 100 U. S. 514; Mobile v. Watson, 116 U. S. 289 (6 Sup. Ct. Repr. 398); Shapleigh v. City of San Angelo, 167 U. S. 646 (17 Sup. Ct. Repr. 957); Huffmire v. City of Brooklyn, 162 N. Y. 584 (57 N. E. Repr. 176); Trustees of Erie Academy v. City of Erie, 31 Pa. 515.

OPINION BY MR. JUSTICE STEWART, January 3, 1910:

The borough of Brushton, incorporated in 1890, was erected out of part of Sterrett township, Allegheny county. By ordinance dated May 12, 1891, the borough authorized the Pennsylvania Water Company, a corporation chartered under the Act of April 29, 1874, P. L. 73, and its supplements to supply water to Sterrett township, to construct and operate water works within the borough limits, granting to said company the use of the streets of the borough, "to lay pipes for the purpose of supplying water to the borough and its inhabitants, and authorizing a contract with it for the supply of hydrants for fire and other public uses." Prior to this time no action had been taken by the borough to provide a water supply. The water company filed its written acceptance of the grant, and within the time prescribed constructed its system of mains and pipes throughout the borough. At the time of filing the bill in this case it had laid and was using some eleven and a half miles of iron pipe in what had been the borough of Brushton, and was supplying therefrom more than 1,600 private consumers, and, in addition, the municipality itself with such amount of water as was required for public purposes. The grant to the water company of the right to use the streets for the purpose aforesaid was without limit as to time; but the ordinance contained a stipulation, however, that the contract between the borough and the company for water for municipal purposes should be limited to ten years. In 1894, the borough of Brushton was annexed to the city of Pittsburg, and became the thirty-seventh ward of that city. The ordinances of the respective municipalities through which this annexation was effected, provided that, "All contracts for the supply of water and all other obligations existing and valid

between the said borough and other persons, firms or corporations, shall be accepted and assumed by the said city of Pittsburg, and all the provisions of the same shall be faithfully kept and performed thereby, and the said city shall have and enjoy all the rights, privileges and immunities thereunder." In May, 1908, the city of Pittsburg, claiming the right to extend its own water system within the territory so annexed for the purpose of supplying water therein for public and private purposes, began preparations to that end. Thereupon the Pennsylvania Water Company filed the present bill to restrain the city from proceeding further. The learned chancellor being of opinion that the case fell within the ruling in White et al. v. The City of Meadville et al., 177 Pa. 643, granted an injunction, which on hearing was made perpetual. From this decree the city appeals. This brief statement of facts sufficiently discloses the ground of controversy. The fact that Brushton borough no longer exists as a municipality, adds nothing to the complications of the case. While the controversy is between the city of Pittsburg and the water company, the former stands for the borough of Brushton, and has no rights beyond those which the borough of Brushton could have asserted had it attempted to do what the city is threatening. The case stands as though the ordinances under which the water company makes its present claim were originally enacted by the city of Pittsburg. This would be true even in the absence of an express assumption by the city of the contract obligations of the borough, for it is an undoubted rule that, except where it is otherwise provided by law, the contracts and indebtedness of the old corporation become the contracts and indebtedness of the consolidated or annexing corporation. "There is no doctrine better settled than that a change in the form of government of a community does not ipso facto abrogate pre-existing law, either written or unwritten. This is true in regard to what is strictly municipal law, even when the change is by conquest. The Act of Assembly converting the borough into a city did not therefore of itself, and in the absence of express provisions to that effect, either repeal former Acts of Assembly relative to the borough,

or annul existing ordinances:" Trustees of The Erie Academy
v. City of Erie, 31 Pa. 515. The whole effort of the appellant
is to distinguish the present case from the Meadville case be-
cause of a single fact which appeared in the latter but does not
appear in this. In the Meadville case the water company was
incorporated under the original act of April 29, 1874, which
conferred upon such companies the exclusive right to provide
water within the district for which they were chartered. Here
the water company was incorporated subsequent to the
amendment of June 2, 1887, P. L. 310, which denies such ex-
clusive privilege to companies thereafter incorporated. The
doctrine of the Meadville case needs no other vindication or
exposition than is to be found in the opinion. All that is re-
quired here is a simple restatement of what the case does
decide. In that as in every case the power of the municipality
to provide a supply of water rested in express legislative
grant. It was the extent of this grant, and what limitations, if
any, were imposed on its exercise, that were the questions un-
der consideration. The case decided that the grant left it
optional with the municipality to provide water in one of two
ways, either by constructing a water system of its own, or
through an independent agency; that it could not employ both
methods at the same time, and that when it had provided a
water supply by contract with an independent agent, it was
without power to employ the alternative method, so long as
the right of the independent agent to supply the water con-
tinued and was being rightfully exercised. This was the whole
of the decision; and it was made to rest fundamentally and ex-
clusively on the ground that the municipality having once pro-
vided a supply of water for its inhabitants by one of the
methods, the power granted it was exhausted. The decision
puts no limitation whatever on the contracting power of the
municipality where it has elected to get its water supply
through an independent company; nor does it confine the
municipality to that particular method for any longer period
than during the existence of the contract between it and the
independent agent. Where it does so contract the terms of
the contract are for the municipality to define. It may, as was

the case here, grant to the water company the privileges of the public streets for an indefinite term, in which case, the privilege continues so long as the company furnishes an adequate and suitable supply, or it may contract for a long or a short term as it prefers, and repeat the process as often as occasion requires. With the expiration of the term fixed by the contract the power of choice beween methods revives, and the municipality becomes free as ever to adopt thereafter the method it formerly rejected. Now when the ground of the decision—viz., the exhaustion of power in the municipality, that is, the exhaustion of privilege of choice between methods,—is considered, what room can there be for supposing that it is authority only in cases where the company contracted with has under the law an exclusive privilege? Does not exhaustion result just as certainly where the contract for the supply is with a company not having an exclusive privilege as where it is with one having an exclusive privilege? Exhaustion follows when the object has been accomplished, no matter what the privileges of the agent employed to accomplish it. Any such distinction as is here insisted upon between companies, in this particular connection, would be arbitrary in the extreme, without any justification whatever in reason. Certainly no warrant can be found for it in the Meadville case. Not only so, but at best the distinction is most unsubstantial, when considered as affecting the rights of the municipality. It goes no deeper than this; in the one case the exclusive privilege is derived from express legislative grant; in the other, like exclusiveness necessarily results, against the municipality, for the reason that the latter having made its contract with the company for a water supply through it, has exhausted all the power it had for the time being to employ the other method; not that having contracted with one company, it may not give to another company the right to enter upon the streets and lay pipe; but it may not, whether there be one or several companies supplying the inhabitants with water, build water works of its own to compete with the companies which entered with its consent. Since there is no longer exclusiveness by charter, there is nothing to prevent a municipality from allowing its streets to

be torn up by as many companies as choose to avail themselves of the privilege. Security against abuse here lies in the fact, that it is within the discretion of the municipal authorities to withhold assent when the privilege is asked,—since by the act of June 2, 1887, no company theretofore or thereafter incorporated can enter upon the street of any city or borough except by municipal consent;—or, what is perhaps a more certain safeguard, the manifest unprofitableness of any such franchise in territory already fully supplied. Again, the exclusive privilege, as against the municipality, in any water company having a contract with the municipality, we think necessarily results from quite other considerations as well. Take the present case: The Pennsylvania Water Company by ordinance was given the right to enter upon the streets of the borough with its mains and pipes for the purpose of supplying the inhabitants with water; it did so enter, and at great cost to itself supplied and placed in position the necessary equipment, and has continued to meet every requirement of its contract with regard to the supply. It will not be pretended that the borough, if it still had a separate existence, could recall the franchise which it gave the company before its expiration, or that it could interfere with the company's mains and pipes in any such way as would prevent the company from furnishing a supply of water to all who desired it. Suppose, however, it were allowed to build and employ water works of its own, what would be the result? Competition? No, not competition—which would be bad under any condition as a gross perversion of municipal function—but absolute and total destruction of the company's property, as complete as would result from a forcible tearing up of the mains and pipes and casting them aside. We can do no better in this connection than repeat what was said by Mr. Justice DEAN in the Meadville case, page 651: "If anything be manifest, it is, that if two water mains be laid side by side on the same street, equally accessible to the householder on each side, conveying double the quantity needed, with double sets of hydrants, pumping stations, offices, salaries and expenses, one or the other must be abandoned. No community will pay double for any article

of necessity or luxury. If the property holder must, by compulsory taxation, support the municipal system, he will not voluntarily support the private corporation system; such a conflict of interests will inevitably bankrupt the system which depends on the voluntary patronage of the public. We hesitate to assume, every court is bound to hesitate long before assuming, the legislature intends by grants to distinct corporations for public purposes, there shall arise such conflict in the exercise of the franchises as will result in practical destruction of property of any citizen without compensation. It is a cardinal rule of construction between older and younger grants of franchises, the sovereign does not intend the younger shall infringe on the older; but to assume these franchises can be in existence and in operation at the same time, is to assume the commonwealth has granted precisely the same thing to the municipality that it had already granted to the water company; for in a business view, the contemporaneous exercise of the franchise is impossible." It is clear that except as a contract with a water company for a water supply gives an exclusive right, as against the municipality, this must result— while the municipality may not violently tear from its place the property of the company and so deprive the company of its rights, it must be allowed to accomplish by indirection a result equally destructive and disastrous. The law will not aid in the accomplishment of any such end. For the reasons above given we think the distinction pressed upon our attention is unsubstantial and therefore unimportant. We are not unmindful of the fact that in one, or perhaps two, of our cases expressions may be found which seem to give color to the appellant's contention, notably in the case of Philipsburg Water Company v. Philipsburg Borough, 203 Pa. 562, so much relied on as authority for the position taken by appellant. Nevertheless, explicit as the statement in that case is to the effect that the law as declared in the Meadville case "applies only when an exclusive right is assailed," it may be confidently asserted that neither in that case, nor in any other decided by this court from which can be gleaned an expression in seeming accord with that above quoted, has the adjudication

rested on any such distinction, but on facts wholly independent of it. The only question before the court in the Philipsburg case was as to the power of the borough to exercise the right of choice between two water companies, both of which were rightfully exercising their franchises within the borough, but with the borough under no contract obligation to take its water supply from one rather than the other, the contract which the borough had with the earlier company having terminated. The appellant's contention there was, that the borough having once contracted with it—the first company to enter the field—notwithstanding the termination of that contract, the municipal function had passed from the borough, and could only be resumed by the purchase of the company's water works in the way provided by the act of assembly in such cases. The Meadville case was cited in support; ineffectually of course, for under the doctrine of that case nothing whatever in the way of municipal function passed by operation of law from the borough in consequence of its having contracted with the earlier company, except the right to construct and employ a competing system of its own during the continuance of the contract. It is impossible to derive more than this from the Meadville case. The complaining company there rested its right to exclusive privilege not on any contract, but its charter; and this court held that there was nothing in its charter that constituted it the only company with which the borough could contract for a water supply. This came far short of deciding that the doctrine of the Meadville case was applicable only where the right was exclusive. The fact is the Meadville case was wholly without applicability to the one then being considered. The only occasion for comment upon it in that case was the fact that the complaining company had invoked it as an authority for the position taken that the borough, by having once contracted with it for a water supply, notwithstanding the contract had expired, had exhausted its power to contract with any other company. Whatever in the opinion filed in the Philipsburg case went beyond this, in the way of qualifying or controlling the application of the Meadville case, was outside the case that was being considered, and

cannot be allowed the effect of an adjudication. Quite as much may be said of the other cases in which there is a suggestion of qualification of the doctrine of the Meadville case as a general rule applicable to all companies, whether with or without exclusive privilege. Not one of them depends for its decision upon any such consideration.

The assignments of error raise several questions beside that we have here considered, but none of them call for particular discussion. The ordinance of the borough of Brushton and the written acceptance of it by the appellee, together with the latter's performance, unquestionably constitute a binding contract. "Where the grantee of such a franchise has performed the public service imposed as a condition of the grant, the franchise is a contract, which falls within the provisions of the Constitution of the United States forbidding the States to pass laws impairing the obligation of contracts:" Dillon's Municipal Corporations, sec. 691, citing New Orleans Gas Light Co. v. Louisiana Light, etc., Co., 115 U. S. 650; Louisville Gas Co. v. Citizens' Gas Light Co., 115 U. S. 683. Conceding, only however for the sake of argument, that under the provisions of its charter and because of the nonexclusive right of the appellee, the city of Pittsburg could have extended its water system within the territory of the borough, the fact that it did not do so until after the borough had exercised its right to provide its water supply through the agency of the appellee, and after the city had expressly assumed all the obligations of the borough, including its water contracts in the ordinance of annexation, must be conclusive against the present claim of right in this regard. It is a matter of no significance that the appellant, being a city of the second class, has no power under its charter to contract for a water supply through an independent agent, except in territory not otherwise supplied, and then only for a term of years and without exclusive privilege. The borough of Brushton had such right, unqualified, and exercised it by contracting with the appellee. The limitation in the city's charter which confined its right to contract for a water supply in "territory not supplied with water," could mean nothing more than that its right in this respect was limited to territory

not already supplied through the city's established water
system. The evident purpose was to avoid and prevent com-
petition in the matter of water supply with the city in the
territory that the city actually supplied. When Brushton
borough was annexed it was not so supplied, and in assuming
the contract obligations of the borough with the appellee, the
city simply was exercising its right to supply territory not
supplied through the city system. Besides, we are not con-
cerned in this controversy with the extent of the rights of the
city of Pittsburg with respect to its system of water supply.
What does concern us is the right in the appellee to exercise
the privilege it acquired under its contract with the borough
of Brushton. That right was in effect exclusive as against the
borough of Brushton so long as the contract held; it is no less
exclusive against the city of Pittsburg's interference in the
way threatened.

A single word as to that way, in concluding this discussion.
Had the city introduced its mains and pipes into the borough
of Brushton before the annexation, as it is claimed it had the
right to do, it would, in so doing, have occupied toward Brush-
ton simply the position of an independent, competing water
company, with which the borough could, other things being
out of the way, contract for a water supply. Whatever the
city's privileges in this regard, it owed no duty to Brushton.
The position now that the borough has been annexed has been
wholly changed. If the city were now to introduce its water
system it would not be for the purpose of contracting to furnish
a supply of water, but with a view to furnish water through
its own system in the same manner that it furnished it to
every other subdivision of the municipality. In effect it
would be Brushton borough enlarged supplying its own water.
Under settled principles this may not be done under existing
conditions.

We have not adverted to the acts of recognition and ratifi-
cation by the city, since the annexation, of the contract
obligation of Brushton with the appellee, not that we have
overlooked them or the argument based on them, but only
because we are willing to rest our decision on the ground we

have indicated as entirely sufficient for the determination of the case.

The case was properly decided by the learned chancellor; the assignments of error are overruled, and the decree is affirmed.

MR. JUSTICE MESTREZAT, dissenting:

In the majority opinion, it is said: "The ordinance of the borough of Brushton and the written acceptance of it by the appellee (Pennsylvania Water Company), together with the latter's performance, unquestionably constitute a binding contract." And further: "What does concern us is the right in the appellee to exercise the privilege it acquired under its contract with the borough of Brushton. That right was in effect exclusive as against the borough of Brushton so long as the contract held." From this assumption of the existence of a contract between the borough and the water company, created by the ordinance and its acceptance, the majority of the court holds that the borough has exercised its municipal function to provide a supply of water for the use of its inhabitants, and therefore has exhausted its power and cannot now construct a water plant of its own. The borough (now the city) denies that the ordinance and the acceptance constitute a contract, obligating the water company to supply water to the public and preventing the borough from erecting a water plant of its own, and hence the question on which the case turns is: Does a borough ordinance, without limit as to time, granting permission to a water company to enter the municipality and lay its pipes in the streets, and regulating the use of the streets by the company, constitute a contract between the borough and the company to supply water to the public which exhausts the power of the municipality to supply itself with water, and thereafter prevents the borough from erecting its own water works for that purpose? The majority of the court answers that question in the affirmative.

The Pennsylvania Water Company, the plaintiff, is a corporation organized under the Act of April 29, 1874, P. L.

73 and its supplements, to supply water to the public in Sterrett Township, Allegheny County. It did not record its charter until May 3, 1888, and hence became subject to the act of June 2, 1887, which repealed the exclusive privileges conferred on water companies by the act of 1874. Brushton Borough was erected out of a part of Sterrett Township in 1890, and on May 12, 1891, passed "an ordinance authorizing the Pennsylvania Water Company to construct and operate water works within the borough limits, and granting the use of streets to lay pipes for the purpose of supplying water to the borough and its inhabitants, and authorizing a contract for the supply of hydrants for fire and other public uses." The water company by a resolution of its board of directors accepted "the grant of the right of way through the streets, lanes and alleys of the borough of Brushton, Pa., under the terms and subject to the conditions of an ordinance containing said grant." A contract was entered into between the borough and the water company by which the latter agreed to furnish to the borough water for extinguishing fires, etc., on the terms therein stipulated for ten years from the date of the contract. It expired May 18, 1901.

In 1894 the borough of Brushton was annexed to the city of Pittsburg, and became the thirty-seventh ward of the city. By virtue of its charter powers, the city proposed to extend its own water system and furnish water in the annexed territory. This bill was filed to restrain such action on the part of the city. The court below sustained the prayer of the bill and the city has taken this appeal.

I concede that the city of Pittsburg now occupies the same relative position towards the water company that Brushton borough did prior to its annexation to the city, and that the city is required to observe all contracts which were entered into between the borough and the water company. That question, which is discussed in the majority opinion may be eliminated from the case. I do not agree that the ordinance of May 12, 1891, and its acceptance constitute a contract between the company and Brushton borough which exhausts the power of the borough to supply water

to the public or prevents it from erecting its own water plant or the city from extending its water system and furnishing water within the same territorial limits. The affirmative of that proposition, I submit, is not supported by reason or precedent.

The act of April 29, 1874, declares that water companies shall have power to provide, erect and maintain a water plant for introducing water into a municipality where they may be located, and for that purpose may maintain reservoirs, pipes and conduits; and they are further authorized to enter upon such streets as may be necessary to occupy, and to occupy, ditch and lay pipes through the same. It will be conceded that the legislature had the right to grant such powers to a water company, and hence by the express terms of their charter they have the right to enter the municipality and construct their plant for the purpose of furnishing water to the public. The Pennsylvania Water Company therefore was duly authorized to enter Brushton borough and lay its mains and pipes in the streets of the borough for the purpose of supplying water to the public without any contract with or grant of power by the municipality. Any attempted grant of such power by the borough was without force or effect, and conferred no authority upon the water company which it did not already possess through the powers granted by its charter.

While a water company organized under the act of 1874 and its supplements has authority to enter a borough and construct its plant without the consent of the municipality, yet it may not do so without submitting to police regulation. The power to enter the borough and supply water is one thing; the manner in which the water company may exercise its charter functions by the use of the streets and other highways of the municipality is quite another question. The former power is conferred directly by the state; the latter, by statutory provision, is under the immediate control of the municipality. The same clause of the act of 1874, as amended by the Act of May 16, 1889, P. L. 226, which invests water companies with their corporate powers places the police regula-

tion over the streets in the municipality. That clause, after conferring upon water companies their powers to furnish water and to enter the municipality for that purpose, contains this provision: "Subject to such regulations in regard to streets, roads, lanes and other highways and impairing the free use thereof as little as possible, and subject to such regulations as the councils of said borough, town, city or district may adopt in regard to grades or for the protection and convenience of public travel over the same." The only manner or way by which a borough can exercise its statutory or inherent police power of regulating the use of streets by a water company is by ordinance; and as this is the sole authority the borough had over the water company, the ordinance attempted to exercise only such power. This necessarily and logically follows from the powers conferred upon the water company and the borough. It will not be presumed that the borough attempted to exercise any other authority, as the ordinance itself does not declare any greater grant of power. In fact, the borough could exercise only such authority in dealing with the water company as was conferred upon it by the legislature or as it inherently possessed by virtue of its police power.

Brushton borough was incorporated under the general borough Act of April 3, 1851, P. L. 320, and it was therefore authorized, inter alia, "to provide a supply of water for the use of the inhabitants" of the borough. It may perform this function by establishing its own water plant or by contracting with a water company for that purpose. When, however, a water company claims a contract by which the borough agrees that the company shall perform the municipal function and supply water to the residents of the municipality, it must assert its claim through an ordinance which clearly authorizes such contract. If the ordinance is of doubtful meaning or does not clearly disclose the intention of the borough to divest itself of the power to establish its own water plant or to contract with another company, the agreement will not be construed to effect such purpose: Skaneateles Waterworks Co. v. Village of Skaneateles, 184 U. S. 354;

Knoxville Water Co. v. Knoxville, 200 U. S. 22. In Coosaw
Mining Co. v. South Carolina, 144 U. S. 550, Mr Justice HAR-
LAN delivering the opinion said (p. 562): "The doctrine is
firmly established that only that which is granted in clear and
explicit terms passes by a grant of property, franchises, or
privileges in which the government or public has an interest.
Statutory grants of that character are to be construed strictly
in favor of the public, and whatever is not unequivocally
granted is withheld, nothing passes by mere implication."
In Knoxville Water Co. v. Knoxville, 200 U. S. 22, the same
Justice delivering the opinion, after quoting the above ex-
tract from the Coosaw Mining Co. case, said (p. 34): "We
have never departed from or modified these principles, but
have reaffirmed them in many cases. . . . The authorities
are all agreed that a municipal corporation, when exerting
its functions for the general good, is not to be shorn of its
powers by mere implication. If, by contract or otherwise,
it may, in particular circumstances, restrict the exercise of
its public powers, the intention to do so must be manifested
by words so clear as not to admit of two different or incon-
sistent meanings."

Interpreting the ordinance in question in accordance with
these well established rules of construction, it is clear that it
is not and was not intended to be a contract by which the
borough exercised its municipal function in furnishing water
to the public and thereby deprived itself of the power to estab-
lish a water plant. The ordinance authorizes the water com-
pany "to construct, maintain and operate water works in the
borough of Brushton." As observed above, the water com-
pany acquired this authority through its charter from the state
itself, and hence this clause of the ordinance was useless and
granted no additional authority to the company. It is with-
out any force or effect so far as it may have attempted to
grant the water company authority to exercise its charter
powers within the borough. It is not a contract, nor does it
authorize the municipal officers to enter into a contract by
which the company is to supply water to the public within
the territorial limits of the borough. The ordinance in terms

does not bear such interpretation, and the rules of construction in such cases compel the interpretation in favor of the municipality and against the grantee. Hence this clause of the ordinance establishes no contractual relation with the water company authorizing it "to provide a supply of water for the use of the inhabitants," resident within the territorial limits of the former borough of Brushton.

The ordinance also grants to the water company the use of the streets to lay pipes for the purpose of supplying water to the borough and its inhabitants. This is simply the grant of the use of the streets for the purpose of laying its pipes, and contains none of the elements of a contract. It is not a contract on the part of the borough with the company to supply water to the public; nor does it obligate the company, by its acceptance of the ordinance, to furnish water to the borough or to any of the inhabitants thereof. This, like the preceding part of the ordinance, shows that it was simply a permission to occupy the streets for the purpose of laying pipes and constructing the water plant, and did not require the company to assume the municipal function of providing a supply of water to the public.

The ordinance empowered the municipal officers to enter into a contract with the water company for the erection of fire hydrants for the supply of water for municipal purposes for a term of ten years, and a contract was subsequently entered into and expired in 1901. During the continuance of the contract, it is conceded, the borough was without authority to supply water for such purposes by means of its own plant or by securing water from another water company. The contract entered into in pursuance of this part of the ordinance was obligatory upon the borough and, like the contract of an individual, could of course be enforced against the municipality. At the expiration of the contract, however, the municipality was again at liberty to obtain a supply of water for such purpose from any other source, through its own plant or from another company.

With this analysis of the ordinance, it must be manifest that it is not and was not intended to be a contract by which

the borough exercised the municipal function of supplying water to its inhabitants. It does not do so in terms and it is against the well established rules of interpretation to extend the language of the ordinance so as to give it that effect.

The act of 1874 confers upon a water company an exclusive right to furnish water in the territory for which it is chartered, and under that act, no other company could be chartered or was permitted to furnish water within the territorial limits supplied by a prior corporation. It was not a question of contract with the borough. The state by legislative enactment declared that a water company should have exclusive authority to furnish water in such territory, and the municipality was without authority to control or deny the power. For thirteen years the people of the commonwealth submitted to the monopoly thus imposed, and then the legislature, by the Act of June 2, 1887, P. L. 310, repealed this clause of the act of 1874 granting exclusive privileges, and water companies incorporated thereafter did not possess an exclusive franchise. The Pennsylvania Water Company is subject to the act of 1887 and therefore could not claim exclusive authority to supply water within the territorial limits of Brushton borough. The state may now grant charters to as many water companies as it deems proper to supply water in the same municipality, and such companies have the right to enter and lay their pipes in the municipality, subject only to police regulation.

The majority opinion maintains that the alleged contract is within the protection of the federal constitution, and quotes in support of its position the following from Dillon's Municipal Corporations, sec. 691; "When the grantee of such a franchise has performed the public service inposed as a condition of the grant, the franchise is a contract which falls within the provision of the constitution of the United States forbidding the states to pass laws impairing the obligations of contracts." This doctrine is settled by both the federal and state courts. It is unquestionably true that a grant by ordinance, supported by a consideration, becomes a contract within the protection of the federal constitution.

In order, however, to give such effect to an ordinance, it must be contractual in its nature and impose an obligation which is to be observed by the water company. Municipal ordinances are of different forms, depending upon their nature or character, and include those sustaining or enforcing the police power of the municipality, those relating to public improvements, and those which are contractual in their nature and, therefore, in their construction and application involve contract relations with third persons: 2 Abbott Municipal Corporations, 1318. If a private corporation enters a borough in pursuance of an ordinance which grants the permission in consideration of a duty to be performed or a consideration to be paid by the corporation, on compliance therewith by the corporation a contract is established which cannot be impaired by any action of the municipality. In the present case, the nature of the ordinance and the language of the acceptance clearly show that it was enacted to enforce the police power of the municipality over the use of the streets by the water company, and therefore it established no contractual relation between the borough and the company by which the latter agreed to supply water to the inhabitants of the municipality. There is not a single word in the ordinance or in the company's acceptance of it which discloses the intention to make it such a contract. The ordinance did not require the company to supply water to the public, resident within the borough, as a condition of the grant, and hence there was no service imposed by the ordinance, the performance of which by the company would constitute the franchise an enforceable contract to supply water, protected by the federal constitution. As pointed out above, the water company was authorized by its charter to enter the borough, and hence was not required to do so under any contract with the municipality. It was, however, compelled to submit to the police regulation of the municipality, and that police regulation was established by the ordinance with which the water company was required to comply. It cannot be ousted from the borough so long as it complies with the police regulation established by the ordinance, not because the ordinance creates a contractual relation thereby protecting

it from interference by the municipality, but because its charter confers full authority upon it to enter and remain in the municipality for the purpose of exercising its charter rights.

In Skaneateles Waterworks Company v. Village of Skaneateles, 184 U. S. 354, the supreme court of the United States considered the nature and effect of a franchise or privilege like the one under consideration, and unanimously decided that it did not prevent the municipality from constructing and maintaining a waterworks system to supply itself with water, and that in constructing and operating such system, the municipality did not violate a contract within the protection of the federal constitution. There, the water company, with consent of the village of Skaneateles, obtained a charter to supply pure and wholesome water to the authorities and the inhabitants of the village and to lay its pipes in the streets of the village. After the construction of the works, the village and the company entered into a five-year contract for a supply of water and the erection of hydrants and for the payment of certain compensation therefor. At the expiration of the contract, the village began proceedings for erecting and operating waterworks of its own. The water company filed a bill to restrain this action. The supreme court and court of appeals of New York held that the bill should be dismissed, and the supreme court of the United States concurred in the judgment. In the trial court, the referee, whose conclusions of law were affirmed by the courts, found as follows: "That the consent of the village of Skaneateles to the organization of the plaintiff as a waterworks company, and the making of a contract by the village of Skaneateles with the plaintiff for the supply of pure and wholesome water, did not vest in plaintiff the exclusive right to furnish said village with water, or prevent the village from granting to another corporation the right to supply water within said village, or the village from constructing and maintaining a waterworks system to supply itself with water." In affirming the judgment of the state court, the supreme court of the United States, speaking by Mr. Justice Peckham, said (p. 362): "There is no implied contract in an ordinary

grant of a franchise, such as this, that the grantor will never do any act by which the value of the franchise granted may in the future be reduced. Such a contract would be altogether too far reaching and important in its possible consequences in the way of limitation of the powers of a municipality, even in matters not immediately connected with water, to be left to implication."

The Pennsylvania Water Company has not, by its charter, an exclusive privilege to supply water to the public of Brushton borough, and it is not claimed that another water company cannot be organized under the act of 1874 and its supplements and enter the borough and supply water to the public. It is not contended that the borough, since the expiration of its ten-year contract, may not contract with another water company to furnish water to the inhabitants of the borough. Conceding the correctness of these propositions, is there any sound reason why the municipality may not erect its own waterworks for the purpose of supplying the public with water? The argument made in the Meadville case and by the majority of the court in this case is that competition would be ruinous to the original water company, but that argument is without force when it is conceded that, under the act of 1887, another water company may enter the borough and supply the inhabitants with water. This creates competition that would be equally as detrimental to the financial interests of the original water company as the erection of a water plant by the municipality. Competition was prevented by the exclusive grant conferred by the act of 1874, under which the water company in the Meadville case was incorporated; but since the act of 1887, it is limited only by the number of water companies incorporated for supplying water in the same municipality.

The majority opinion relies upon White v. Meadville, 177 Pa. 643, to sustain its position that the ordinance of May 12, 1891, is a contract between the water company and the borough which deprives the borough of the right to erect its own water plant. This view fails to note the character of the contract in that case. There, certain persons submitted a

proposition to furnish a supply of water to the city which was accepted by councils, and a committee was appointed "to contract for the construction of such works with the 'Meadville Water Company,' as soon as the company was duly incorporated." The company was subsequently chartered, and a contract for a water supply was executed by the proper municipal officers. The case was ruled upon the construction of the two acts of assembly, the general corporation act of April 29, 1874, and the act of May 23, 1874, conferring upon cities of the third class the exclusive right to supply themselves with water or to contract with a water company to do so. In the opinion, Mr. Justice DEAN says (p. 653): "We do not doubt the legislature could, by the act of May 23, 1874 (not the corporation act of April 29, 1874), have granted to the city the right to change back and forth from one method of supply to the other, as whim or interest might dictate; it is sufficient to say, it did not do so." This remark of the learned justice shows not only that the Meadville case was decided principally upon the court's interpretation of the Act of May 23, 1874, P. L. 230, but that in construing the act the court overlooked the important and controlling fact that clause 9 of sec. 20 of the act only authorized the city to make a contract for a water supply "for any length of time not exceeding ten years." The act, therefore, did give the city the right to change its method of supply, "as whim or interest may dictate," at the expiration of each decennial period. And such is the present law: Act of May 23, 1889, P. L. 277.

The water company in the Meadville case had an exclusive franchise, having been incorporated prior to the act of 1887. What was determined in that and kindred cases following it, as understood by Justice DEAN who wrote the opinion, was subsequently declared by him in Carlisle Gas, etc., Co. v. Carlisle Water Company, 188 Pa. 51. The full bench heard the Meadville case and five of the same justices heard the Carlisle Water Company case. Referring to those cases, Mr. Justice DEAN in the latter case said (p. 54): "In all these cases we held that by the present legislation on the subject a municipality was authorized to adopt one of two methods to

supply itself with water: 1. It could construct and operate its own works by municipal taxation; or, 2. It could contract with a private corporation to construct works and to supply the municipality with water." It will therefore be observed that, under those decisions, a contract with a private corporation which would estop a municipality from erecting its own waterworks must be an agreement "to construct works and to supply the municipality with water." It is not sufficient that the municipality simply grants permission to a water company to lay its pipes in the streets in the manner prescribed in the ordinance, but the contract must stipulate for the erection of the works and a supply of water, in other words, must bind the water company to construct the works and also to supply the public with water. There certainly would be ample ground for the contention that a municipality would be estopped from erecting its own works after it had entered into an agreement with a private corporation like the contract in the Meadville case, and the works had been constructed and the water was being supplied in strict conformity with the agreement. Such a contract would be enforceable, under the doctrine of the Meadville case, against a municipality as it would be against an individual.

But in the case in hand we are not confronted with such a contract by the borough in an attempt to exercise its municipal function in furnishing a supply of water to its inhabitants. There was no inducement held out by the borough or any official action on its part inducing the Pennsylvania Water Company to procure its charter and erect its plant to supply water to the residents of the borough. It is not contended on the part of the water company that it has an exclusive franchise or that it has any contract that estops the borough from exercising its function to supply water, other than the ordinance of May 21, 1891, and its acceptance by the company. The ordinance was passed in pursuance of the legislative authority contained in the act of 1874, as amended by the act of 1889, conferring police jurisdiction, for the purpose of regulating the use of the streets by the water company, and did not establish a contractual relation with the water

company granting it authority to supply water to the public in Brushton borough. Such has been the unanimous opinion of this court in more than one of its recent decisions: Philipsburg Water Company v. Philipsburg Borough, 203 Pa. 562; Hastings Water Company v. Hastings Borough, 216 Pa. 178.

The consequences of this decision are far-reaching, and affect the people in every municipality of the commonwealth which is supplied with water by an incorporated water company. Notwithstanding the legislature by the act of 1887 repealed the exclusive privileges conferred on water companies by the act of 1874, the majority of the court, by judicial construction, now practically repeals the later statute and restores the exclusive privilege conferred by the earlier act as against the municipality. If an ordinance granting permission to a water company to lay its pipes and mains in the streets of a borough constitutes a contract authorizing the company to supply the people of the municipality with water for an indefinite period, then an exclusive franchise, as against the borough, has been restored to all water companies, as no company can legally enter any municipality without the authority of an ordinance subjecting it to police regulations. The situation in the state under this decision, is that when a water company enters a borough by permission of an ordinance imposing police regulations and indefinite as to duration, a contract, inviolable under the federal constitution, is thereby created and the municipality cannot thereafter erect a plant and supply water to its inhabitants. This is, as I conceive, in direct antagonism to our own decisions, it interprets corporate grants most strongly in favor of the corporation and against the public, contrary to the settled rules of statutory construction, and is at variance with the decisions construing similar statutes by the courts of last resort in other states and by the supreme court of the United States.

I would reverse the decree of the court below and dismiss the bill.

BROWN, J., concurs in this dissent.

MR. JUSTICE POTTER, dissenting:

With due respect to the opinion of the majority of the court I am unable to see how the conclusion reached in this case can be sustained without ignoring the decisions of this court in Dorrance v. Bristol Boro., 224 Pa. 464; Hastings Water Co. v. Hastings Boro., 216 Pa. 178; Philipsburg Water Co. v. Philipsburg Boro., 203 Pa. 562; Boyertown Water Co. v. Boyertown Boro., 200 Pa. 394; Braddock Borough v. Penn Water Co., 189 Pa. 379, and other cases which recognize the principle that in the absence of an exclusive franchise to a water company, and in the absence or upon the expiration of a contract for the supply of water, a municipality may furnish its own supply.

In the present case it goes without saying, that the water company is entitled to the full benefit of the terms and conditions of the contract which was made with it by the borough of Brushton, when it was permitted to enter upon the streets and lay its pipes. But the question for consideration is as to what that contract really was. It is to be found in the terms of the ordinance, and turning thereto we find that it provided for two things; one was the grant to the water company of the use of the streets of the borough, "to lay pipes for the purpose of supplying water to the borough and its inhabitants," and in addition thereto, the ordinance authorized "a contract with it for the supply of hydrants for fire and other public uses." As stated in the majority opinion, "The grant to the water company of the right to use the streets for the purposes aforesaid was without limit as to time; but the ordinance contained a stipulation, however, that the contract between the borough and the company for water for municipal purposes, should be limited to ten years." At any time, then, after ten years, the borough was at liberty to contract with any other water company for a supply of water. There never was a time during the corporate existence of the plaintiff company when the door was not open to any other company to enter the borough and supply the inhabitants. There was never any exclusive right in the plaintiff company. Since the passage of the act of June 2, 1887, it has been the policy of the law of Pennsylvania to forbid monopoly in the supply of water. Had

it not been for the fact that in White v. Meadville, 177 Pa. 643, the water company had a charter granted prior to 1887, which gave it an exclusive right, the decision in that case would have been in flat violation of the statute. The decision did not in fact turn upon the question of contract at all. It was decided solely upon equitable principles as applied to that case. No question of contract between the city of Meadville and the water company was involved. The water company had a right which no other company could invade, and the court held that although the city was not bound to purchase the waterworks, it would not be equitable to allow it to destroy their value by duplicating them at the expense of the taxpayers.

It is but fair to call attention to the fact that Justice DEAN who wrote the opinion in White v. Meadville, also sat in the case of Philipsburg Water Co. v. Borough of Philipsburg, 203 Pa. 562, and was cognizant of the distinction drawn between the two cases, and if he had felt that in the latter case the doctrine of the Meadville case was being unduly narrowed, he would presumably have expressed his dissent.

In the present case, as there is a clear legal right upon the part of as many other companies as may choose to do so, to enter the field and supply water, it is evident that no equitable right of the plaintiff company would be interfered with, by permitting the city to do what any other water company may freely do. In the absence of an exclusive right in the plaintiff, why should the right of the city alone be denied? I can see neither reason nor justice in any such discrimination. In the majority opinion it is admitted that even when the city has contracted with one company, it may give to another company the right to enter upon the streets and lay pipes; but as the opinion goes on to say, "it may not, whether there be one or several companies supplying the inhabitants with water, build waterworks of its own to compete with the companies which entered with its consent." And why not? Has the city not the right to do directly that which it has the unquestioned right to do indirectly? If it may grant permission to some other company organized for that purpose, to enter and lay

pipes, and supply the inhabitants of that section of the city, with pure, filtered water, why may it not furnish its own supply for the same purpose?   It is difficult to conceive of any good reason to the contrary.

If we look to the contract into which the borough entered in this case, it will appear that the only thing to which it bound itself, was the purchase of a supply for hydrants and fire purposes, during a term of ten years, which period expired in 1901. That contract had nothing to do with the supply of water to the people for domestic use.   The other feature of the ordinance was the grant by the borough to the water company, of permission to occupy the streets with its pipes.   This right is not being questioned or interfered with.   The city, as successor to the borough, merely claims the right to lay its own pipes also, as any other water company may do.   The precise evil which the decision of the majority makes possible now, was anticipated and supposedly guarded against by the decision against the contention of this same water company, in Braddock Boro. v. Penn Water Co., 189 Pa. 379, in which the opinion of the court below was adopted by this court, and in which it was said (p. 383) : "The importance of holding them strictly within the powers and privileges granted to them, is emphasized not only by the fact that they are now attempting to exclude a large borough, with a waterworks, from laying pipes in one of its own wards; but also, by the fact that if the city of Pittsburg adds any more territory on the east, it will have no right to extend its water system to cover it, if the franchise contended for is exclusive."

The reasoning of this court in Olyphant Sewage Drainage Co. v. Olyphant Borough, 211 Pa. 526, applies most aptly to the circumstances of this case.   There the plaintiff company had been granted permission to construct and maintain in the streets a system of sewage.   It contended that the grant of such permission tied the hands of the borough, and prevented it thereafter from constructing its own system.   The contention was overruled, and the claim of an exclusive right denied, and in the opinion in that case, this court said, the act "under which plaintiff company was incorporated did not confer

any special rights, privileges or powers upon it, except the right to enter upon and occupy public highways with the consent of local authorities. The naked grant of permission to use streets and lay pipes confers no exclusive right. It cannot be doubted under our well established rules of law that whatever right the plaintiff had under the ordinance of 1894 was subject to the future use of the highways by said borough whenever it chose to construct a sewage system of its own." This language fits accurately the case now before us, for the principle involved is precisely the same. Aside from its contract for the supply of water for ten years for fire protection, the plaintiff company here had nothing but the naked right to lay pipes in the streets, and this conveyed no exclusive right, and gave it nothing which ought to be held to prevent the borough from establishing a system of its own. No substantial distinction can be drawn between the rights granted under the law to a water company, and those which may be exercised by a private company organized to construct and maintain a system of sewers in the streets of a municipality. The reasoning which, in the public interest, prohibits a monopoly in the one case, should deny it in the other. The claim set up in that case was most properly denied by this court; but a similar claim here advanced by the plaintiff company, meets with favor in the majority opinion. It seems to me here, that, as was suggested in the Olyphant case, the effect of denying the right of a municipality to construct its own system in a field open to all other companies, is an unwarranted impairment of the powers of municipalities, and an unjustifiable abridgement of the rights and privileges of the citizens thereof.

BROWN, J., concurs in this dissent.