## Tarentum Water Company, Appellant, *v.* Tarentum Borough.

*Corporations—Water companies — Boroughs—Contract—Conditional contract.*

1. Where a water company, in pursuance of the power conferred upon it by the legislature and without any inducement by the authorities of a borough, enters upon the borough's streets and proceeds to furnish water generally to the public, and subsequently the borough enters into a contract with the company by which the latter agrees to furnish water for municipal purposes, and agrees, as a consideration for the privilege of supplying such water, not to charge the inhabitants of the borough any excess over the rates it had theretofore been charging, such a contract does not preclude the borough from subsequently furnishing its own supply of water for its inhabitants.

2. Ordinarily it is to be assumed when a contract expresses distinctly the common purpose of the parties that it expresses the whole purpose. The proper rule in such case would refer whatever stipulations the contract contains to the purpose of the contract as defined, and construe it accordingly.

Argued Oct. 26, 1910. Appeal, No. 131, Oct. T., 1910, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., July T., 1908, No. 1,059, dismissing bill in equity in case of Tarentum Water Company & Allegheny Valley Water Company v. Tarentum Borough. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to enjoin the defendant from constructing waterworks.

SHAFER, J., found the following facts:

1. The Tarentum Water Company was incorporated December 1, 1885, for the supply of water in the borough of Tarentum, its charter not being recorded, however, until September 21, 1887. The Allegheny Valley Water Company was incorporated on April 7, 1906, and the Tarentum Water Company, on August 9, 1906, transferred all its property and franchises to the Allegheny Valley Water Company, under the Act of April 17, 1876, P. L. 30.

The defendant is a borough, operating under the general borough law.

2. The Tarentum Water Company began the laying of lines of pipe for the supply of water to the inhabitants of the borough of Tarentum just after the recording of its charter, and by the year 1892 it had laid eight or ten miles of pipe in the borough, and during that time it supplied water to the public in the borough. This was done under its charter powers without any communication, so far as appears, with the borough, or any contract with it.

3. On January 8, 1892, an ordinance was passed by the borough council, authorizing a contract with the Tarentum Water Company for the purpose of providing water for the public and to private consumers in the borough. The ordinance provided for a contract with the water company for a period of five years, for furnishing water to the borough for a certain number of fire plugs at a fixed rate, and further provided for an agreement that the water company should furnish water to consumers in the borough at the rate it was then charging until its gross annual revenue from the borough should amount to $10,000 or upwards, and that thereafter it should furnish the consumers in the borough at the rates then charged by the Sharpsburg Water Company, and giving the borough an option at the end of five years to renew the contract for either five or ten years. The contract between the borough and the water company was executed and delivered in accordance with this ordinance.

4. The fire plugs provided for in the contract were then installed, and thereafter the water company made a certain extension of its lines, and improvements as to the source and quality of its water supply.

5. No other water company has been incorporated to furnish water in the borough of Tarentum, nor has the borough a water plant of its own. The Tarentum Water Company and its successor, the Allegheny Valley Water Company, have been supplying water in the borough for public and private uses since the making of the agreement above mentioned without any renewal of the contract, or the making of any additional contract.

6. The gross annual revenue of the water company from the borough of Tarentum, at and before the time of the filing of the bill, was more than $10,000.

7. On April 27, 1908, the council of the borough passed an ordinance submitting to the voters a proposition to increase the indebtedness of the borough in the sum of $100,000 for the purpose of erecting a municipal waterworks. An election was held on June 16, 1908, which resulted in favor of the increase of the indebtedness proposed, and the borough claims the right under this vote to erect waterworks to supply water for public use and for private consumers, and proposes to do so.

The court entered a decree dismissing the bill.

*Error assigned* was decree dismissing the bill.

*W. B. Rodgers*, with him *John S. Cort*, for appellants.—A contract having been entered into, and the water company having furnished water thereunder, the power of the borough to build its own works was exhausted: White v. Meadville, 177 Pa. 643; Metzger v. Beaver Falls Boro., 178 Pa. 1; Troy Water Co. v. Troy Boro., 200 Pa. 453; Potter County Water Co. v. Austin Boro., 206 Pa. 297.

*Nelson McVicar*, of *Kennedy, McVicar & Hazlett*, for appellee.

OPINION BY MR. JUSTICE STEWART, January 3, 1911:

The questions on which this case was made to turn in the court below, and which were argued on this appeal, assume that the purpose of the borough of Tarentum in entering into the contract of 1892 with the Tarentum Water Company, one of the appellants, was to provide a supply of water for the use of the inhabitants of the borough. If the assumption should be found unwarranted, these questions become unimportant and the discussion of them unnecessary. When a contract expresses distinctly the common purpose of the parties, it is to be assumed that it expresses the whole purpose. The proper rule in such case would refer whatever stipulations the contract contains to the purpose of the contract as defined, and construe it accordingly. Now, the purpose of this contract, as expressed in the contract itself, was to "provide such water as may be necessary for fire protection and other borough purposes," thus limiting the purpose to the supply of municipal wants, as distinguished from the wants of the general public. The provision of the contract which is supposed to widen the purpose, is a stipulation that the water company is to furnish water to the general consumers "at the present water rates charged, until its gross annual revenue from the borough shall amount to $10,000 or upwards, in which case the water company is to furnish water to the citizens of the borough at the present rates charged by the Sharpsburg Water Company." Under the rule of construction as above stated, this stipulation is not to be regarded as an independent covenant, but is to be referred to the purpose defined in the contract, and is to be regarded either as a condition, or as whole or part of the consideration. Suppose however that the purpose expressly defined in the contract makes the contract, taken as a whole, equivocal as to the purpose, and we resort to matters extrinsic to find the true purpose. It then becomes clear that what the borough was bargaining for was not a supply of water to the inhabitants, since the

water had already been, and was then being supplied, but solely with respect to rates of a supply already furnished. Before the contract in question was entered into, and without any authority derived from the borough, the water company had occupied the streets of the borough with its pipes, had fully completed the erection of its system, and was at the time supplying water to all who demanded it. This it had done, and was doing, not at the invitation of the borough, not pursuant to any contract with the borough, but in the exercise of power which was conferred on it by the legislature, and which was supposed to make the company wholly independent of the borough. So far as appears it did not expend a dollar under the contract here considered. How under such circumstances can it be said that this was a contract to provide the inhabitants of the borough with water? Without this contract the company would have continued to supply water to the inhabitants, for that was the purpose of its organization, and its only source of revenue. Had the borough offered inducements to its organization, and encouraged it to expend its money upon the understanding that it was to have the privilege of furnishing a water supply to the inhabitants, the case might present a different aspect; but it did nothing of the kind. It found a company furnishing water; it wanted a supply for municipal purpose, and stipulated with the company that an acceptance of the latter's offer to furnish water for municipal purposes was conditioned on its promise not to increase its rates when it furnished water to the inhabitants. The law authorizes boroughs to provide a supply of water for the use of the inhabitants, but the doctrine asserted in all our cases is that this power is to be exercised by a borough in one of two ways, either by erecting a plant of its own, or by contracting with a water company; and that the adoption of either is an exhaustion of the power. Can it be supposed for a moment that the understanding with respect to the contract under consideration was, that it was to express a choice between

methods? Certainly there is nothing to indicate that the borough so understood it; and if so understood by the defendant, what equity had it to assert its understanding against the borough? It has done nothing, expended nothing, yielded nothing, because of its understanding of the contract. To hold that the borough, under such a contract as we have here has precluded itself from furnishing its own supply of water for its inhabitants, would be to carry the doctrine of our cases beyond reason. Giving the contract the most favorable construction for the appellant, we can see nothing in it so far as the supply of water to the inhabitants is concerned, but simply an obligation on the part of the company not to charge in excess of the rates it had theretofore been charging, in consideration of the borough securing from it water for municipal purposes. Nor can we regard it as an expression of choice by the borough between methods it is allowed to adopt for furnishing water to the inhabitants. The court very properly dismissed the bill. The decision rested on considerations not here adverted to. The conclusions of the court with respect to these may or may not have been correct. We decide nothing as to this; but for the reasons here stated we affirm the decree dismissing the bill, and accordingly dismiss the appeal.