# Bethlehem City Water Company *v.* Bethlehem Borough, Appellant.

*Corporations—Water companies—Boroughs—Implied contract—Water supply—"For use of inhabitants."*

1. Where a water company erects its plant and proceeds to supply water to a particular territory in accordance with its chartered right, and thereafter, when a borough is erected out of a portion of the territory, continues to supply the inhabitants thereof with water and supplies the borough with water for fire protection at fixed rates, and, with the increase of the borough extends its mains and builds additional fire hydrants at the request of the borough, the water company cannot claim that by virtue of any one of these acts, or all of them together, there was an implied contract between the water company and the borough to supply water to the borough, and that such contract had exhausted the power of the borough to supply water to its citizens by its own plant.

2. It is only for the purpose of supplying water "for the use of the inhabitants" of a borough, and not for supplying water for municipal purposes, that a borough may adopt one of two methods which exhausts its municipal power and prevents it resorting to the other for a supply of water.

3. It is settled doctrine that a municipal corporation, when exercising its function for the general good, is not to be shorn of its power by mere implication and that the intention to restrict the exercise of its public powers must be manifest by words so clear as not to admit of two different or inconsistent meanings.

Argued March 7, 1911. Appeal, No. 163, Jan. T., 1910, by defendant, from decree of C. P. Northampton Co., June T., 1909, No. 2, on bill in equity in case of Bethlehem City Water Company v. Bethlehem Borough et al. Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Bill in equity to enjoin the defendant from issuing bonds and from laying mains and doing other things for the supply of water in a portion of the borough of Bethlehem formerly constituting the borough of West Bethlehem. Before STEWART, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree awarding injunction.

*George R. Booth* and *John G. Johnson,* for appellant.—
The mere fact that a contractual relation was established
between the municipality and the company was not the
test of exhaustion of municipal power: Centre Hall Water
Co. v. Centre Hall Boro., 186 Pa. 74; Boyertown Water
Co. v. Boytertown Boro., 200 Pa. 394; Dorrance v. Bristol
Boro., 224 Pa. 464.

A municipal corporation, when exerting its functions for
the general good, is not to be shorn of its powers by mere
implication: Knoxville Water Co. v. Knoxville, 200 U. S.
22 (26 Sup. Ct. Repr. 224).

*J. Davis Brodhead,* with him *Herbert J. Hartzog,* for
appellee.—Upon the incorporation of the borough of West
Bethlehem it was optional with the municipality to pro-
vide water in one of two ways, either by constructing a
water system of its own, or through an independent agency;
it could not employ both methods at the same time, and
when it had provided a water supply by contract with an
independent agent it was without power to employ the
alternative method, so long as the right of the independ-
ent agent to supply the water continued and was being
rightfully exercised: Penna. Water Co. v. Pittsburg, 226
Pa. 624; White v. Meadville, 177 Pa. 643.

OPINION BY MR. JUSTICE MESTREZAT, April 24, 1911:

The borough of Bethlehem, Northampton county, was
incorporated in 1845, and in 1854 became subject to the
general borough Act of April 3, 1851, P. L. 320. The bor-
ough of West Bethlehem was incorporated under the
same act in 1886 out of territory in Hanover township,
Lehigh county. A small stream—the county line—lay
between the two boroughs, which were consolidated in
1904 and constitute the present borough of Bethlehem,
the defendant.

The Bethlehem South Gas and Water Company was incorporated by a special act of assembly, approved April 13, 1864, and was empowered to introduce into "the village of Bethlehem South, and the villages adjoining, in Saucon, Salisbury, and Hanover townships, in the counties of Northampton and Lehigh, a sufficient supply of gas and pure water." The company was organized in 1867 and immediately thereafter began to supply Bethlehem South with water. In 1884, the company extended its mains and pipes into the village of Hanover township, which, in September, 1886, was incorporated as the borough of West Bethlehem. The company, on July 17, 1885, accepted the constitution of 1874; and on November 20, 1899, filed in the office of the secretary of the commonwealth its acceptance of the constitution and of the corporation Act of April 29, 1874, P. L. 68, and its supplements. The Mountain Water Company was incorporated in July, 1893, and the Bethlehem Consolidated Water Company in January, 1902. The three companies were, on April 19, 1902, merged into the Bethlehem Consolidated Water Company which, on December 3, 1903, sold and conveyed to the plaintiff, the Bethlehem City Water Company, all its franchises and property.

Prior to the incorporation of West Bethlehem borough the water company laid its mains and pipes through the principal streets of the former village, then in Hanover township, and, at the instance of the inhabitants, supplied them with water for domestic purposes and fire protection. At that time, there were eight fire plugs in the village. The company has, since the incorporation of the borough, continued to supply water for municipal and domestic purposes, and has enlarged and extended its plant to meet the increased demand of the growing population of West Bethlehem borough. The number of fire plugs at present is thirty-nine.

In December, 1908, the town council of the defendant borough passed an ordinance which was approved by the burgess providing for an election to determine upon an

increase of the borough's indebtedness for the purpose of erecting a water plant to supply water to the borough of Bethlehem, including the territory embraced in the former borough of West Bethlehem. The election was held and resulted in favor of the proposed increase of indebtedness. This bill was filed by the plaintiff company to enjoin the defendant borough and its officers from increasing the municipal indebtedness and from issuing any bonds for the purpose of raising funds for the construction of waterworks, and from laying mains in and supplying water to the territory formerly comprising the borough of West Bethlehem, now a part of the present borough. A perpetual injunction was issued as prayed for, and the defendant borough has appealed.

The plaintiff contends that the borough of West Bethlehem by its action and relations with the plaintiff company and its predecessors, resulting in an implied contract with the water company to furnish a supply of water to the borough, has exhausted its power to supply water to its citizens and is estopped from erecting and maintaining its own plant for that purpose. The question for decision in the case is, therefore, whether under the facts and the law the borough has a right to construct its own water plant.

It was found that "no express contract was ever entered into between the plaintiff or its predecessors and the borough of West Bethlehem, defining the relation existing between the said parties, either as to the amount which the borough was to pay for water supplied, or as to the term in which it was to be supplied; and no ordinance granting permission to occupy the streets was ever asked for or received by the plaintiff or its predecessors from the borough of West Bethlehem or the defendant borough." This finding would ordinarily, under our cases, be a sufficient reply to the contention of the plaintiff company that the borough had selected another agency to supply water to its inhabitants and was therefore estopped from constructing its own plant for the purpose. It is argued,

however, and upon this the company relies to sustain its position and the decree in its favor, that there is and has been since 1887 by reason of the act and conduct of the parties an implied contract whereby the boroughs, in consideration of the furnishing of water by the plaintiff and its predecessors, agreed not to supply the inhabitants of West Bethlehem borough with water through its own municipal agency. We find nothing in the record to sustain this contention. The company had erected its plant and was supplying water to the territory of West Bethlehem for domestic and fire purposes before the existence of the borough. This was done by virtue of its charter powers. Subsequent to the creation of the borough, it continued to perform the same service, not by reason of any contract with the borough, but in exercise of the same powers. It is said, however, and it may be conceded that after the incorporation of the borough in 1886 the water company enlarged its plant, extended its mains, that additional fire plugs were installed at different points in the borough at the request of the municipality and for which the borough paid an annual rent, that the council agreed to pay for fire plugs at certain locations if the company would extend its mains to those points, and that the borough published statements showing expenditures to the plaintiff company and its predecessors for water received for municipal purposes. How do either of these facts or all of them together establish an implied contract that the "borough agreed not to supply the inhabitants of West Bethlehem with water through its own municipal agency"? The general borough act of 1851 confers upon every borough incorporated under the act the "power to provide a supply of water for the use of the inhabitants." It is this power, when once exercised, that is exhausted and estops the borough from adopting another method to supply water.

Keeping in view the settled doctrine that a municipal corporation, when exerting its function for the general good, is not to be shorn of its power by mere implication

and that the intention to restrict the exercise of its public powers must be manifested by words so clear as not to admit of two different or inconsistent meanings, it is apparent that none of the acts of the municipality, suggested by the plaintiff, discloses an intention to contract with the water company to provide water "for the use of the inhabitants" of the borough or to make the company the municipal agent for such purpose. The water system of the plaintiff company, as we have seen, was constructed before the incorporation of the borough, and the inhabitants of that territory were being supplied with water by the company. It entered the territory and laid its mains and pipes without permission, invitation or request of the municipality and solely by virtue of the authority conferred by its charter. There was no express contract to supply water to the township or to the borough. The company, therefore, in furnishing water for fire protection occupied the same relation to the borough that it did to any other consumer. The borough paid the company fixed rates for the service as other consumers did. The extension of the mains and the erection of additional fire hydrants did not change the relation of the parties whether it was done at the request or command of the borough. There was no contractual relation between the parties by which the borough could enforce its demands. These facilities became a necessity as the borough grew and the consequent demand for water increased and were added in compliance with the company's corporate duty and as a matter of business expediency to increase the revenues of the water company. The money expended by the company for these purposes was repaid by the increase in its revenues resulting from the greater number of consumers. Facilities for supplying water to additional private consumers became necessary and were furnished. Without the extension of its mains and the additional fire hydrants, the company could not exercise its charter power "to supply water to the public" within the territory for which it was incorporated, and the failure to do so

would have endangered the charter and subjected the company to statutory proceedings to compel it to perform its corporate duties. It is equally true that without the additional facilities, the company could not have increased its revenues and its profits. Its action in acceding to the borough's request to furnish additional facilities for supplying water for municipal purposes cannot, therefore, be regarded as evidence of an implied contract to supply water "for the use of the inhabitants" of the borough. It is for that purpose and not for supplying water for municipal purposes that a borough may adopt one of two methods which exhausts its municipal power and prevents it resorting to the other for a supply of water. There is not a single act by the borough disclosed by the record that shows an intention to divest itself of its power to construct its own system to provide a water supply for use of the inhabitants of the municipality. On the contrary, the intention not to do so distinctly appeared when, in 1904, the borough declined the company's proposition that the parties should enter into a ten-year contract for water for fire protection and that the borough should take ten additional fire hydrants. The extent of its relations with the water company was the purchase, at fixed rates, of water for fire protection and other municipal purposes and it, therefore, occupied the same relation to the company as any other consumer. It is idle to say that such conduct on the part of the borough was the adoption of another method for supplying water, and estopped the municipality from constructing its own plant in the exercise of its statutory power to furnish water to its citizens.

Our conclusion is in accord with our cases on the subject, as a careful consideration and a correct apprehension of the decisions will disclose. The most recent case is Tarentum Water Company v. Tarentum Borough, 230 Pa. 148. There, the water company laid its mains without authority of the borough, and after supplying water to the public for some time council authorized a contract which was subsequently executed by the proper officers

of the borough and water company by which the latter was to furnish water to the borough for a certain number of fire hydrants at a fixed rate, and to consumers at the rate the company was then charging. The fire hydrants were then installed and the company extended its lines. We held that the borough was not precluded from furnishing its own supply of water for its inhabitants.

We are all of the opinion that there is nothing in this record that warrants a decree prohibiting the borough from constructing its own water plant.

This bill was not filed by the plaintiff company as a taxpayer, and it is not attempting to assert its rights as such. The validity of the election to ascertain whether the municipal indebtedness should be increased cannot, therefore, be determined in this proceeding. The question was properly raised and was decided on a taxpayer's bill filed in another case against the defendants in this case, and we file an opinion herewith in an appeal in that case, Stem v. Bethlehem Boro., infra, sustaining a decree holding the election to be invalid.

The decree of the court below is reversed, and the bill is dismissed at the cost of the appellee.