# Bethlehem, Appellant, *v.* Allentown.

*Equity—Appeals—Preliminary injunction—Refusal to continue.*

1. On appeal from refusal of the court below to continue a preliminary injunction, it is not usual to pass on more than is actually required to dispose of the appeal.

*Municipalities—Water supply—Purchase of franchise of private company—Act of July 26, 1913, P. L. 1374.*

2. While in Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, the Supreme Court held that municipalities come within the Act of July 26, 1913, P. L. 1374, 1388, article III, section 3, par. (d), only to the restricted extent signified by the statute itself, it did not there decide that if the franchise of a water company were purchased by a city, it—when asserting a right against competition which the public service company law affords the vendor—was not to be considered (for that limited purpose) as standing in the shoes of the latter, within the purview of the act.

*Water companies—Charter—Construction—Contemporary construction—Adjoining townships.*

3. Where a charter of a water company empowers it to supply water to a village and "the villages adjoining" in certain townships named, and such provision has for a long time been construed and relied on as embracing all villages in the adjoining townships, whether or not every one of such communities actually adjoined or touched the first village, such construction, not being impossible, will prevail to protect material rights acquired under such contemporary construction.

*Equity—Equity practice—Judicial notice—Geographical facts—Classification of cities—Duty of chancellor.*

4. A chancellor may take judicial knowledge of local geography, including the class into which the several cities and other communities, with which he has to deal, fall; but he should be careful to state all information in that regard which may be necessary to a proper understanding of the record by the appellate court.

*Equity—Equity practice—Pleading—Prayers—Municipalities—Water supply.*

5. Where one municipality files a bill in equity to restrain another municipality from invading its territory under a franchise which it has purchased from a private water company, and it is claimed that the Public Service Company Law applies, the bill

should pray for an injunction to preserve the status quo pending an application to the Public Service Commission.

*Municipalities — Water supply — Purchase of franchises from private company—Franchise covering territory in another municipality.*

6. Necessity for legislation suggested to cover cases where one municipality claims to supply water in territory included in an adjoining municipality, under a franchise purchased from a private water company.

Argued May 24, 1922. Appeal, No. 289, Jan. T., 1922, by plaintiff, from decree of C. P. Lehigh Co., Jan. T., 1922, No. 3, dismissing motion to continue preliminary injunction, in case of City of Bethlehem v. City of Allentown. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Bill in equity for injunction. Before Groman, P. J.

Motion to continue preliminary injunction. See Lehigh Co. L. J. 398.

The opinion of the Supreme Court states the facts.

Motion dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*George R. Booth* and *William W. Porter,* for appellant.—A city, in furnishing water to the public, acts not as a municipality but as a business corporation: Bailey v. Phila., 184 Pa. 602; Western S. Fund Society v. Phila., 31 Pa. 175.

Plaintiff had the right, in its capacity of a private corporation, to become purveyor of water to the public. By the deed to it of the rights of the Bethlehem City Water Co., plaintiff acquired the rights and franchises of that company, which included the right to continue to furnish water to the territory originally known as Hanover Township.

The case at bar is practically ruled by Bethlehem City Water Co. v. Bethlehem Borough (No. 2), 253 Pa. 333.

*R. J. Butz,* of *Butz & Rupp,* with him *Robert L. Stuart,* City Solicitor, for appellee.—The mere fact that a municipality acquires the property of a public utility does not make it a public service company: Point Bridge Co. v. Pittsburgh Rys., 240 Pa. 105; Lehigh Water Co.'s App., 102 Pa. 515.

A city or a borough can surrender its right to supply its inhabitants with water from a municipal plant by contracting with a private water company to do the same thing: Metzger v. Boro., 178 Pa. 1; Wilson v. Boro., 180 Pa. 509; Potter Co. Water Co. v. Boro., 206 Pa. 297.

It is only when a city or a borough employs the contract method for the purpose of supplying water "for the use of the inhabitants," and not for supplying water for municipal purposes that such borough or city exhausts its municipal power and is prevented from resorting to the other method for a supply of water, namely, the erection and maintenance of a municipal water plant: Bethlehem City Water Co. v. Boro., 231 Pa. 454; Tarentum Water Co. v. Boro., 230 Pa. 148; Dorrance v. Boro., 224 Pa. 464.

Water companies have no power to supply water in territory adjacent to the municipal or quasi municipal division in which they are located, and a provision in the certificate of incorporation, granting power to supply water in adjacent territory, is inoperative: Bly v. Water Co., 197 Pa. 80; New Castle Water Co. v. Water Co., 18 Pa. C. C. R. 498; Armstrong Water Company v. Water Co., 24 Pa. C. C. R. 13.

A city of the third class has the right to supply water to the public beyond its corporate limits only in pursuance of the Act of March 31, 1915, P. L. 38, and said act does not authorize an extension into the territory of another third-class city without its consent.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, June 24, 1922:

This case is before us on appeal by plaintiff from the refusal of the court below to continue a preliminary in-

junction.  It is not usual in such instances to pass on more than is actually required to dispose of the appeal, and we shall adhere to that rule; but, in order to afford an understanding of the controversy, it is necessary to state the material facts considered by the court below, and several of the contentions involved.

The Bethlehem South Gas and Water Company, incorporated in 1864, was empowered to introduce into the "village of Bethlehem South, and the villages adjoining in Saucon, Salisbury and Hanover townships, in the Counties of Northampton and Lehigh, a sufficient supply of water." The company was organized in 1867, and immediately thereafter began to carry out the provisions of its charter.  The Mountain Water Company was incorporated in 1893, and the Bethlehem Consolidated Water Company in 1902.  These three concerns were, on April 18, 1902, merged into the Bethlehem Consolidated Water Company, which, in 1903, conveyed all its franchises, powers, rights, privileges, property, real and personal to the Bethlehem City Water Company; and the latter on September 28, 1920, after approval by the Public Service Commission, conveyed all the merged rights, powers, privileges and franchises to the City of Bethlehem (plaintiff).  On February 2, 1920, a portion of Hanover Township was annexed to the City of Allentown (defendant).  Previous to that date, the Bethlehem City Water Company, or its predecessor, had laid mains and pipes in certain parts of the annexed territory, supplying the inhabitants with water; in the fall of 1921, Allentown began to extend its municipal water mains into this district and continued to do so until the preliminary injunction issued.

Plaintiff contends it is vested with the franchise rights of the Bethlehem South Gas and Water Company (hereinafter referred to as the Water Company), one of which is to serve the territory here involved, and another,—since the Public Service Company Law (Act of July 26, 1913, P. L. 1374, 1388, article III, section 3, par. d),—is

to demand that any municipality, desiring to enter this
territory, shall first receive a certificate of public con-
venience: Barnes Laundry Co. v. Pittsburgh, 266 Pa.
24, 31-2. Defendant replies that the City of Bethlehem
is not a public service company, but a municipality,
therefore the part of the Act of 1913 relied on by plain-
tiff has no application; and argues with some force,
that it would be unjust, in many ways, to deprive one
municipality, in favor of another, of the right to serve
with water any part of the territory covered by the
former.

While, in the Barnes Laundry Company Case, supra,
this court held that municipalities come within the Act
of 1913 only to the restricted extent signified by the
statute itself, we did not there decide that, if the fran-
chise of a water company were purchased by a city, it,—
when asserting a right to the protection against com-
petition which the Public Service Company Law affords
the vendor,—was not to be considered (for that limited
purpose) as standing in the shoes of the latter, within
the purview of the legislation just mentioned; and, since
the point indicated was not touched on by the chancellor,
we shall not now pass on the questions involved in an
answer thereto, but await a fuller development of facts,
as hereinafter stated. In the meantime, however, we
must consider the ground on which the court below dis-
posed of the present case.

The learned chancellor construed the water company's
charter as confining that corporation's rights to the vil-
lage of Bethlehem South with other immediately contigu-
ous villages, and decided the case on the express ground
that, since the territory defendant had invaded, albeit
occupied by plaintiff, did not immediately adjoin, or
touch, Bethlehem South, the district in question was not
covered by the charter of the water company, whose as-
signees were similarly powerless to assert any right in
respect to such territory; and concluded that on this
state of facts plaintiff had no standing in the present

controversy.   On the facts developed, as understood by us, we cannot agree with the position thus taken by the learned chancellor.

It appears that the original water company, whose charter is now under consideration, first extended its mains, out of Bethlehem South into adjoining territory, as early as 1884 (see Bethlehem City Water Company v. Bethlehem Boro., 231 Pa. 454, 456; and 253 Pa. 333, 335), and continued such extensions toward and into the district now in controversy, long before its annexation to defendant city, and prior to the acquisition of the water company franchise by plaintiff municipality; just when these events took place appellant was not allowed to show, practically all its offers of evidence being refused (in most instances erroneously) as irrelevant, under the view (already stated) taken by the chancellor concerning the meaning of the water company's charter.

As previously said, the charter empowers the company to supply water to the "village of Bethlehem South and the villages adjoining in Saucon, Salisbury and Hanover townships." If, for a long term of years, this provision were construed by all concerned as covering villages generally in Saucon, Salisbury and Hanover townships, whether or not every one of such communities actually adjoined, or touched, the village of Bethlehem South, it would be too late now for any one but the Commonwealth to question that construction, even if it could do so: Com. v. Bala & Bryn Mawr Turnpike Co., 153 Pa. 47; Pittsburgh Rys. Co. v. Boro. Carrick, 259 Pa. 333, 339. In other words, if the provision under consideration has, for a long time, been construed, and acted on, as embracing "all villages in the adjoining townships of Hanover," etc., that meaning, not being impossible, will prevail to protect material rights acquired under such contemporary construction: see authorities last above cited; and, on governing general principle, see Pa. Schuylkill V. R. R. Co. v. P. & R. R. R. Co., 160 Pa. 277, 298, 299; Nesinger v. Clay & Hinkletown Turnpike Co.,

203 Pa. 265, 267, 268; Chicago v. Sheldon, 76 U. S. 50, 54. This being the case, the chancellor should have admitted any evidence tendered that might shed light on the matters for decision, but, as before stated, instead of so doing, he refused practically all plaintiff's offers of proof, including the charter itself; hence there must be a rehearing.

When the record comes back to this court (if it ever does) with the relevant facts established, we shall then be in a position to pass intelligently on the several questions of law involved, and also have the benefit of the views of the learned court below concerning those questions. Of course, the chancellor can take judicial knowledge of local geography (Pearce v. Langfit, 101 Pa. 507, 512), including the class into which the several cities and other communities, with which we have to deal, fall; but, for the benefit of the reviewing tribunal, he should be careful to state all information in that regard which may be necessary to a proper understanding of the record.

Since the litigation involves public interests, and as counsel say, in their briefs, that defendant is willing to pay a reasonable price for plaintiff's property, but not a franchise value, we venture to suggest that, for the sake of the public, which the parties represent, they should make every effort to arrive at a fair understanding and adjustment, so this controversy may be brought to a speedy close. We also take occasion to note that the matter before us strongly suggests the necessity for further legislation, authorizing municipalities, situated as are the present ones, to move the Public Service Commission to condemn and value the property involved (including, in a proper case, franchise value) wherever a municipality acquires the assets and franchises of a water company, which incidentally operates within the territorial limits of an adjoining municipality; but, pending this legislation, where such a situation arises, those representing the several communities should make every

reasonable endeavor to reach a fair adjustment in their own way.

The bill, as drawn, prays for general relief, and, specifically, that the status quo be maintained till final hearing; and, then, that defendant be restrained from invading the territory of plaintiff. If, when the facts are properly developed, the Public Service Company Law should be held to apply to the present case, then, perhaps, according to our recent decisions (see Fogelsville, etc., Co. v. Pa. P. & L. Co., 271 Pa. 237, 244-5, and authorities there cited), working out a system for administering that law, the prayer for general relief would warrant the chancellor in issuing an injunction, pending application to the Public Service Commission; but, when the record is returned to the court below, if the case is proceeded with, and plaintiff still desires that form of relief, it had better move to amend the bill accordingly.

The order appealed from is reversed, the status quo, as at time of order, is reinstated, and the record remitted for further proceedings consonant with the views here expressed; costs to await final order.