Versailles Township Authority, Appellant, *v.* McKeesport.

378

Argued November 19, 1951; reargued April 21, 1952.
Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS,
ARNOLD and GUNTHER, JJ.

*Alexander J. Bielski,* for appellant.

*H. H. Meizlik,* City Solicitor, for appellee.

OPINION BY RENO, J., July 17, 1952:

This action to quiet title was instituted under Pa. R. C. P. No. 1061, by appellant, Versailles Township Authority of Allegheny County, Pennsylvania, against the City of McKeesport, a city of the third class. The City's preliminary objections were overruled; it filed an answer; the case was tried by a judge without a jury; and a compulsory nonsuit was entered which the court en banc refused to remove.

The appeal was argued twice; the second time pursuant to an order of this Court entered sua sponte. At the second hearing the City raised no question concerning the jurisdiction of this Court, although the amount in controversy, the value of the property claimed, far exceeds the limits of our jurisdiction; and, accordingly, we shall decide the controversy. Act of May 5, 1899, P. L. 248, §11, 17 P.S. §203. At the same time, the Authority formally waived any objection it might have had to the entry by the Court of Common Pleas of Allegheny County of a compulsory nonsuit in an action tried by a judge without a jury. See *Penn'a. R. R. Co. v. J. Jacob Shannon & Co.,* 363 Pa. 438, 70 A. 2d 321; *Malone v. Marano,* 326 Pa. 316, 192 A. 254; *Clark v. Davidson,* 83 Pa. Superior Ct. 79.

Versailles Township, which became the Borough of White Oak in 1947, adjoins McKeesport and, beginning in 1907 and continuing until the present time, the City

has supplied water to the inhabitants of the Township and Borough. Some of the mains and pipes through which the water was supplied were installed by the City; others by the Township, which were paid for by assessments levied against the property owners; and others by private individuals or associations owning and interested in the development of building lot projects. All these mains were connected with each other and with the facilities of the City, and have been continuously maintained, repaired, and operated by the City.

The Authority was incorporated under the Municipality Authorities Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §2900z-1, et seq., and is authorized in broad terms to acquire and operate a water system and to supply water and fire protection to the inhabitants of the Township. Id. §4, 53 P.S. §2900z-5. After the Authority was incorporated, the Borough, pursuant to the Act (§9, 53 P.S. §2900z-10), by deed dated July 5, 1949, conveyed to the Authority: "All the *entire water works distribution system* located in the Township of Versailles, now White Oak Borough, Allegheny County, Pennsylvania, including *all water mains,* pipes, conduits, gates, hydrants, shut offs and valves constituting the water distribution in the Township of Versailles as aforesaid, which has been erected over, under and upon any and all the streets, lanes, alleys, avenues, drives, roads and highways of the said Township, together with the necessary *easements* and *rights of way* in the operation of *the aforesaid system,* or any extension of the same, including the right of transmission of water through said water works system." (Emphasis added.) Under this deed the Authority claims title to the water system, the pipes and mains, installed by the City, the Township, and the private parties. The deed is the Authority's only muniment of title and the sole foundation for this action.

It will be noted, *and this point must be emphasized,* the deed purports to convey an integrated water system. No distinction is drawn between the mains and facilities installed by the Township and those installed by the City and others. The Authority's complaint does not distinguish between the separate installations made by the several parties; it claims the entire system. Furthermore, at the second argument, the Authority contended that it was entitled to a judgment covering all or none of the mains and facilities. The Borough might have limited its conveyance to the mains laid down by the Township, but obviously a conveyance to or a judgment for the Authority for a part of the system would be of little or no value to it. Unless it can quiet or acquire title to the whole system the purpose of the instant action will be frustrated. It will not be content with power to operate only that part of the system which consists of the mains laid by the Township. Accordingly, adjudication will be made within the lines and setting of the deed, the complaint and the Authority's arguments, and will apply to the system as a whole.

I. *The Action.* Pa.. R. C. P. No. 1061, provides in part: "(b) The action [to quiet title] may be brought . . . (2) *where an action of ejectment will not lie,* to determine any right, lien, title, or *interest in the land* or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land; . . ." (Emphasis added.) In its complaint the Authority averred possession of the mains but its brief conceded that the City has possession of and is exercising exclusive dominion over the entire system. Where the defendant is in possession and ejectment will lie, the action to quiet title is not the appropriate remedy. *Buck v. Brunner,* 167 Pa. Superior Ct. 142, 74 A. 2d 528. Here, however, "an action of ejectment will not lie." At issue is the City's

right to continue to supply water in the Borough and for that purpose to use the mains in its streets. The City, according to its brief, claims a right, privilege or franchise, not by virtue of an express grant, but, as will appear, by the operation of the doctrine of estoppel. A franchise is property, but it is not generally regarded as real property though the corporeal property by which it is operated may be real estate. Usually a franchise is classified as an incorporeal hereditament. 37 C. J. S., Franchises, §8(4) ; 23 Am. Jur., Franchises, §5. And ejectment will not lie for an incorporeal hereditament. *Kelly v. Keys*, 213 Pa. 295, 62 A. 911. Both parties lay claim to the mains and the easements acquired against the abutting properties by the installation of the mains in the public streets, and ejectment will not lie for an easement. *Dark v. Johnston*, 55 Pa. 164. An easement or an incorporeal hereditament is an "interest in the land", within the meaning of Pa. R. C. P. No. 1061(b). Restatement, Property, §450. "Land", of course, comprehends not only the surface of the soil, but includes everything that is on it or under it. 74 C. J. S., Quieting Title, §8.

Pa. R. C. P. No. 1061 provides a new form of action and naturally its lines and contours have not yet been sharply defined or drawn. The scholarly commentators (3 Anderson Pennsylvania Civil Practice, pp. 126, 130; Goodrich-Amram, §1061 (b)-5) inform us that the new action absorbed some forms of relief formerly administered in equity and the Supreme Court recently decided that the action "embraces all the equitable jurisdiction which was formerly exercisable under a bill quia timet": *Kalyvas v. Kalyvas*, 371 Pa. 371, 89 A. 2d 819. To what extent, if any, the new action impinges upon or overlaps such remedies as injunctions and trespass which were formerly employed to redress encroachments upon and deprivations of easements, is not now decided. Giving Pa. R. C. P. No. 1061 liberal construc-

tion (Pa. R. C. P. No. 126), we hold that the Authority properly invoked the remedy provided by that Rule.

II. *The Deed To The Authority.* Whether the action is in ejectment or for quieting title, the Authority must recover on the strength of its title or interest and not upon the weakness of the City's. *Blummer v. Metropolitan Life Ins. Co.,* 362 Pa. 7, 66 A. 2d 245. By the Borough's deed the Authority took only the right, title and interest in the water system which the Borough was capable of conveying, and the Borough succeeded only to the title of the Township and the rights which the Township had against the City. Furthermore, the Authority took the grant subject to the burden of easements, incorporeal hereditaments, and servitudes.[1] *Tide Water Pipe Co. v. Bell,* 280 Pa. 104, 124 A. 351. That is to say, that in respect of the City, the Authority took the grant of the Borough subject to the right, title and interest which the City had in the subject matter of the conveyance.

III. *Mains Laid By Township.* The Authority predicates its claim to title to the mains laid by the Township on the fact that the Township paid for the mains through assessments.

Versailles was a township of the second class, and townships of that class were without authority to secure water for their inhabitants until after the enactment of the Act of March 20, 1929, P. L. 33, which amended The General Township Act of July 14, 1917, P. L. 840.[2] The Act of 1929 authorized townships of

---

[1] A servitude is "the subjection of one person to another person, or of a person to a thing, or of a thing to a person, or of a thing to a thing": Bouvier's definition, approved in the *Tide Water* case, supra, p. 113.

[2] Townships of the second class were, in limited instances, authorized to enter into contracts with water companies "for the placing of fire hydrants along [their] highways, for the protection of property from fire." Act of May 25, 1907, P. L. 231.

the second class "by contract with any private corporation or *any adjacent municipality* owning a waterworks system, [to] provide for a supply of water for public and private uses, to be delivered *into the lines of the township* at or near the boundary thereof, *or to be delivered through lines owned* by such company or *municipality* within such township or part thereof. Township supervisors shall have full power by contract *to lay water lines* and to regulate the making of connections therewith, *or* to contract or enter into agreements with any private water company or *municipality for the laying of water lines* within the limits of such township or any part thereof." (Emphasis added.) No action was taken by Versailles pursuant to this Act until after the passage of the Act of 1933, infra.

Private water companies were authorized as early as 1857 to supply water to the inhabitants of townships, and to lay their pipes in their streets and roads. These water companies could enter the townships without the consent of their authorities[3] but were subject to such regulations as they might make in regard to grades or for the protection of public travel. Act of March 11, 1857, P. L. 77, §10, 15 P.S. §1332; Act of April 29, 1874, P. L. 73, §34, as amended by the Act of May 16, 1889, P. L. 226, §2, 15 P.S. §1403. No private water company operated within the Township.

The Township laid mains and assessed the cost thereof against the abutting properties. In this, and in other respects, the record is exasperatingly meager,

_____

The Act of June 1, 1911, P. L. 541, authorized boroughs to unite with other boroughs and townships "in the construction or acquisition and maintenance of works for the supply of water."

[3] *Clear Springs Water Co. v. Borough of Catasauqua*, 4 Leh. L. J., 82, opinion by TREXLER, P. J., later President Judge of this Court.

and does not inform us when the mains were laid. We suppose, however, that this action must have been taken after the effective date of The Second Class Township Law of May 1, 1933, P. L. 103, 53 P.S. §19093-103 et seq., for until then townships were not authorized to assess abutting properties for the cost of installing water mains. That authority was granted by §1610, 53 P.S. §19093-1610, of The Second Class Township Law, which in prior sections (§§1601, 1602, 53 P.S. §§19093-1601, 2) substantially reenacted the provisions of the Act of 1929, supra.

The Act of 1933 granted an option to the Township. *Pa. Water Co. v. Pittsburg,* 226 Pa. 624, 75 A. 945. It could supply the water of an adjacent municipality to its inhabitants either in mains owned by it or in mains owned by the municipality. Clearly, the Township elected to supply the water of the City in the mains of the Township; it connected its lines with those of the City. The connection was apparently not made under a formal written contract, and the record does not disclose action by the supervisors of the Township, recorded in its minutes, which conceivably might constitute a contract. See *Pa. Water Co. v. Pittsburg,* supra. Whether the City had authority to extend its lines in the Township is presently beside the point. The indisputable fact is that the Township connected its lines with those of the City and permitted the City to supply water for public and private uses, without which the Township's mains, lacking a source of water supply and other facilities, such as a reservoir and pumping station, would have been totally useless. Whatever that connection and the supply of water through it may be—a license, a privilege, a franchise, a servitude, or otherwise—it cannot be judicially sundered on this record.

The Township having exercised the option, the conclusion upon this feature of the case is that the title

to the mains installed by the Township is in the Authority, subject, however, to whatever right the City may have acquired, by the Township's election, to supply water therein, until that right shall have been terminated.

IV. *Mains Installed By Private Parties.* The Authority claims title to the mains installed by private parties by reason of the dedication of the streets in which the mains were laid, relying exclusively upon *Cheltenham & Abington Sewerage Co. v. P. S. C.,* 107 Pa. Superior Ct. 225, 162 A. 469, affirmed 311 Pa. 175, 166 A. 649.

Still working with the vague and unsatisfactory record, we gather that in 1923 or 1924, and perhaps at other times, owners laid mains in the streets of their lot developments and connected them with the City's mains. Whether the streets were dedicated before or after the mains were laid and whether the parties who dedicated the streets also laid the mains does not appear, and is probably immaterial. There was, in fact, a dedication of the streets and, under the *Cheltenham* case, the dedication carried with it a dedication of the mains for public use.

But all our cases, from *Com. v. Bowman,* 3 Pa. 202, to *Hoffman v. Pittsburgh,* 365 Pa. 386, 75 A. 2d 649, hold that dedication of land to a public use does not vest a fee simple title in the municipality. The fee still remains in the land owner, *Sterling's Appeal,* 111 Pa. 35, 2 A. 105, and although the care of the land is committed to the municipality, it cannot divert it from the use for which it was dedicated. It cannot sell the land. *Com. v. Rush,* 14 Pa. 186. Since the mains conveyed by the Borough to the Authority will be used for the purpose for which they were dedicated there has not been a diversion of use but certainly the Authority has not acquired a fee in them.

These mains were also connected with the City's mains. Because they were dedicated to public use they may not have become facilities of the City, under *Overlook Development Co. v. P. S. C.*, 101 Pa. Superior Ct. 217, affirmed 306 Pa. 43, 158 A. 869. Yet, as we have said, the City acquired some right in relation to these mains which, even if subject to revocation or forfeiture, cannot be terminated on this slim record.

The land owners who made the dedication or their successors in title were not parties to this record and nothing herein contained will be construed as an adjudication of their rights against the Authority, the Borough, the Township or the City.

V. *Mains Installed By City.* At the first argument the Authority based its claim to title to the City's mains on an allegation that the City's action in laying mains in the Township's streets, in the absence of statutory authority and certificates of public convenience, was ultra vires and, being a trespass upon the streets of the Township, the City "cannot acquire any legal title to water lines so installed."

At the second argument the Authority predicated its claim to title upon the principle of dedication, contending that the City's installation of mains in the Township constituted a dedication of them to public use.

Neither position is sound.

Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the community. *Peterson v. Marianna Borough,* 310 Pa. 524, 165 A. 838. Laying pipes in a public street and supplying water therein to patrons who pay for the service is not a dedication of the facilities to a public use. It would not be such if the act were done by a private water corporation, and a municipality which operates a water system is ad hoc a private business corporation. *Shirk v. Lancaster City,* 313 Pa. 158,

169 A. 557; *Western Saving Fund Soc. v. Philadelphia,* 31 Pa. 175.

Until authorized by the Act of June 13, 1913, P. L. 507, 53 P. S. §11039, cities of the third class could not supply water beyond their boundaries, and after the effective date of the Public Utility Code of May 28, 1937, P. L. 1053, §202(g), 66 P. S. §1122, municipalities were required to secure certificates of public convenience for furnishing "to the public of any public utility service beyond its corporate limits." See *State College Borough Authority v. P. U. C.,* 152 Pa. Superior Ct. 363, 31 A. 2d 557.

The City began to supply water to the inhabitants of the Township in 1907 and has continued to do so until now. From 1907 until the Authority was established the inhabitants had no other available supply of water, except possibly private springs and wells. In these circumstances, it is not difficult to conclude that the Township invited the City to supply water to its inhabitants. At least it permitted the City to do so. The laying of pipes in the Township's streets was an open and notorious act, and the Township stood by while the City excavated and dug into its streets. It issued permits to abutting owners to install connections with the City's mains. It permitted the City to repair and maintain its mains and collect its water rents. It permitted private parties to install water mains and connect them with the City's mains, and *it connected its own lines with those of the City.* The City installed fire plugs, a distinctively municipal service, which must have been ordered by the Township. The Township is charged with knowledge that prior to 1913 the City was not authorized to supply water beyond its corporate limits. It could have ascertained, if it wished to prevent further extensions of the City's water system, that the City had not secured the requisite certificates of public con-

venience. It acquiesced, if it did not directly participate, in the unauthorized actions of the City. These facts, so far from showing title in the Authority, operate as an estoppel against it and its predecessors, precluding their power to question the City's right to maintain its own mains in the Borough's streets. *Bradford v. N. Y. & Pa. T. & T. Co.*, 206 Pa. 582, 56 A. 41; *Penna. R. R. v. Montgomery Co. Pass Ry.*, 167 Pa. 62, 31 A. 468; *Vacation of Melon St.*, 192 Pa. 331, 43 A. 1013; *Breinig v. Allegheny Co.*, 332 Pa. 474, 2 A. 2d 842; Cf. *New Castle City v. Withers*, 291 Pa. 216, 139 A. 860; *Com. ex rel. Margiotti v. U. T. Co.*, 327 Pa. 497, 194 A. 661.

However, we cannot hold on the evidence in this record that the City acquired a franchise, perpetual or otherwise, to supply water in the Borough. We hold only that (1) the City has title to the mains installed by it, and that (2) it apparently has some right and interest in and to the mains laid by the Township and the private parties, by reason of the connections made by them with the City's mains, the exact legal nature of which and its duration cannot, for lack of sufficiently explicit evidence, be determined on this record.

VI. *Status Of The Authority.* While this decision is adverse to the Authority, we thoroughly appreciate its difficult position. Its organic law prohibits it from duplicating existing facilities which serve the same purposes for which it was created, (Municipality Authorities Act, supra, §4, 53 P. S. §2900z-5), and the power of eminent domain conferred upon it may not be exercised against the property of a municipal corporation. Id. §11, 53 P. S. §2900z-12. Moreover, it may not acquire the facilities of a public utility operating within its territory without the approval of the Public Utility Commission, (Id. §9B, 53 P. S. §2900z-10), and the Authority's application for approval of its acquisition

of the City's facilities has been informally refused by the Commission.

The case is not unlike *Bethlehem v. Allentown,* 275 Pa. 110, 118 A. 643. There the City of Bethlehem acquired the rights of several water companies which had supplied water in territory which was afterwards annexed to the City of Allentown. As here, the power of the water companies and of Bethlehem to supply water in that territory was challenged as an exercise of ungranted and unchartered rights. Nevertheless the Supreme Court temporarily enjoined Allentown from supplying water to inhabitants *in its own territory,* but suggested that the parties amicably settle their differences or secure enabling legislation. Possibly, since the General Assembly has in another context (The Water Supply District Law of May 29, 1931, P. L. 215, §71, x(a), 15 P.S. §1478b) authorized the taking of a municipalitiy's water facilities by eminent domain it might afford municipal authorities the same privilege. At all events, the instant situation calls for compromise and settlement.

The judgment of nonsuit is affirmed.